## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **LYNN HARRIS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 06-786-*** |
| | ) | |
| **THOMAS CARROLL**, Warden | ) | |
| and **JOSEPH R. BIDEN III**, Attorney | ) | |
| General for the State of Delaware | ) | |
| | ) | |
| Respondents. | ) | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In February 2004, the petitioner, Lynn Harris, was convicted in a Delaware Superior Court non-jury trial of attempted first degree robbery, second degree conspiracy, and possession of a firearm during the commission of a felony. (Superior Court Criminal Docket #0305005293, D.I. 23). The Delaware Supreme Court, in *Harris v. State,* 2005 WL 850421 (Del. 2004) (*Harris I*) (Exhibit A), summarized the circumstances of Harris' crimes:

> On May 7, 2003, Harris and three codefendants, Marques Comer, Paul Nocho, and Dekelvin Townsend, met at Comer's apartment and formulated a plan to rob Pocket's Liquor Store in New Castle. The four men took a shotgun and four knit caps and drove to the liquor store in Comer's mother's car. They parked the car in a private, secluded driveway near the liquor store. Nocho testified at trial that he walked into the store and made a purchase. When he returned, he told Harris there were two clerks in the store. Harris proceeded toward the store with the shotgun hidden in his overalls and the knit cap on his head. Nocho

returned to the car to wait as the get-away driver. Nocho testified that Townsend's role was to act as the look-out. Comer's job was to collect the money while Harris wielded the shotgun.

Unbeknownst to the four men, a concerned citizen telephoned police about the unfamiliar vehicle parked in her driveway. The caller identified four men exiting the vehicle pulling stocking caps over their faces and noted that one of the men appeared to be carrying a long pipe. The caller stated that the men were walking in the direction of the liquor store. Several police vehicles arrived on the scene within minutes. As police arrived, they saw Harris walking along Route 13 in the direction of the liquor store. With guns drawn, police officers stopped Harris and asked him if he had any weapons, to which Harris responded "yes." The officers patted him down and discovered the shotgun.

Harris testified at his bench trial. He admitted to the judge that he had conspired with the others to rob the liquor store. He admitted that he assigned each coconspirator a specific role in the robbery plan. He admitted to driving with the others to the area near the liquor store in furtherance of the conspiracy. He also admitted to carrying the shotgun.

Harris was sentenced to a term of thirteen years imprisonment, suspended after ten years for a period of probation to follow. *Harris I*, Order at ¶1. On appeal, the Delaware Supreme Court affirmed Harris' convictions and sentence. *See Harris I*. Harris filed a motion for postconviction relief in March 2006, which was denied by the Delaware Superior Court. *See Harris v. State*, 2006 WL 1679455 (Del. Super. 2006) (*Harris II*) (Exhibit B). Superior Court found that Harris' claims were merely conclusory statements made without supporting evidence. *Id*. Superior Court's decision in *Harris II* was affirmed by the Delaware Supreme Court in September 2006. *See Harris v. State*, 2006 WL 2714447 at *1 (Del. 2006) (*Harris III*) (Exhibit C).

<u>Discussion</u>

In his petition for federal habeas relief, Harris advances four grounds for relief: (1) that the police did not possess a reasonable articulable suspicion to stop him; (2) the prosecution proffered insufficient evidence to convict him of attempted robbery and the

2

weapons offense because it did not prove that the shotgun he was carrying at the time he was arrested was a deadly weapon;  (3) that the police violated his rights under the Fifth Amendment by not administering a *Miranda* warning before asking him if he was carrying a weapon;   and (4) that his counsel, William Deely, Esq., provided constitutionally defective representation by not filing a timely notice of appeal.  Because Harris has presented each of these claims to the Delaware Supreme Court in *Harris I* and *III*, they have been properly exhausted.

*Claim One – Reasonable Articulable Suspicion to Stop*

Harris argues the police lacked the necessary "reasonable articulable suspicion" to stop him.  *See generally Terry v. Ohio*, 392 U.S. 1 (1968).  This claim is not cognizable in federal habeas.  "Federal habeas corpus is not available when state prisoners 'have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review…" *United States ex rel. Petillo v. New Jersey*, 562 F.2d 903, 907 (3d Cir. 1977)(*quoting Stone v. Powell*, 428 U.S. 465, 489 (1976)); *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1993).   At trial, Harris moved to have all evidence seized by police at the time of his arrest suppressed because the police lacked a reasonable articulable suspicion to stop him.  *Harris I* at 5-6.  The trial court denied Harris' motion.  *Id.*  Harris thereafter presented this claim to the Delaware Supreme Court in both *Harris I* and *Harris III*.  In *Harris I*, the Delaware Supreme Court held that the police did, indeed, possess the reasonable articulable suspicion necessary to stop Harris at the scene because of the information they were provided by the "concerned citizen."  *Harris I* at 6.  Given the litigation on the Fourth Amendment issue in the state courts, *Stone* precludes

consideration of the point now.

*Claim Two: Sufficiency of Evidence*

Harris argues that the prosecution failed to propound sufficient evidence to sustain a conviction on both attempted first degree robbery and possession of a firearm during the commission of a felony. Harris appears to claim that the State failed to establish that the weapon he carried at the time of the crime – identified by Harris himself as a shotgun – was a deadly weapon under Delaware law. Harris further appears to argue that he renounced the crime sufficiently to vitiate the *mens rea* required to convict on attempted robbery. *See* Del. Code Ann. tit. 11, §541(b). Harris has failed to show that he is entitled to relief on the merits on either claim.

As explained by the Third Circuit, a federal court's consideration under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyer*, 538 U.S. at 72. When looking to Supreme Court precedent, the court "must decide the level

of specificity at which [it] decide[s] whether the state decision is contrary to, or unreasonably applies, that precedent. . . .   Supreme Court jurisprudence addressing §2254(d)(1) has established that determining the 'clearly established' benchmark should be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under §2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion.   The 'materially indistinguishable' test presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis -- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197.   In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices."   *Werts*, 228 F.3d at 197.   Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149.   The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not

serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384 F.3d at 149. Finally, in this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of decisional law is that interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

Harris seems to claim that, because the State did not present evidence showing that the shotgun he possessed on his person at the time of his arrest was functional, insufficient evidence was adduced at trial to convict him of attempted first degree robbery and possession of a firearm during the commission of a felony. (D.I. 2 at 8). In *Jackson v. Virginia*, the Supreme Court stated that claims of insufficient evidence to convict should be reviewed to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979).

As a matter of state law,[1] the prosecution was not required to establish that the shotgun possessed by Harris at the time of his arrest was operable at the time of his offense. As to possession of a firearm during the commission of a felony, the prosecution was merely responsible for showing that Harris' shotgun was a weapon from which "a shot, projectile, or other object may be discharged by force of combustion, , . . . whether operable or inoperable, loaded or unloaded." 11 Del. C. §222(11). As to first degree attempted robbery, the State was required to show that Harris "[d]isplay[ed] what appear[ed] to be a deadly weapon." 11 Del. C. §832(a)(2). At no time during trial was

---

[1] *See Jackson*, 443 U.S. at 324 n. 16.

Harris' weapon referred to as anything other than a gun or shotgun. The police officer who arrested Harris testified that at the time of his arrest, Harris was carrying a "12-gauge shotgun" loaded with "one round of Federal 7-1/2-shot shotgun shell in the chamber." (D.I. 2 at tr. p. 39). Harris himself admitted that he had a shotgun on his person as he walked towards the liquor store. (D.I. 2 at A-50). There was ample evidence in the record to conclude that the shotgun Harris carried upon his person at the time of his arrest was a firearm within the meaning of Delaware law. Whether the gun was capable of being fired was irrelevant under the definition of "firearm" in the state criminal code. Accordingly, Harris is not entitled to relief.

Harris also argues that he should have been acquitted of attempted robbery because he sufficiently renounced his intended crime. At trial, the police officers who arrested Harris testified that they observed him walking towards Pockets at the time of his arrest. Harris testified that he was walking away from the liquor store. Harris claimed that by walking away from the store, he had renounced his intention to commit the robbery. The trial judge, obviously rejecting Harris' version of events, convicted him of attempted robbery. Accordingly, Harris' claim should be considered a challenge to the credibility of the police officers who testified at trial. *Marshall v. Lonberger* made clear that habeas courts are without authority to "redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." 459 U.S. 422, 434 (1983). The police officer's testimony was sufficient for the trial judge to reject Harris' claim of renunciation. *See Jackson*, 443 U.S. at 326 (federal habeas court "must presume" that trier of fact resolved conflicts in evidence "in favor of the prosecution"). Therefore, Harris is not entitled to relief.

*Claim Three:  Alleged Miranda Violation*

Harris appears to argue that his rights against self-incrimination were violated when the police, having stopped him on the road, asked him if he had a weapon without giving him *Miranda* warnings.  (D.I. 2 at 9).  Harris does not allege what prejudice arose from this perceived error.  At trial, Harris did not move to have his statement suppressed. Because Harris' statement – that he did, indeed, have a firearm on his person at the time of arrest – was properly admitted under the public safety exception to the *Miranda* doctrine, Harris is not entitled to relief on this claim.

*Miranda v. Arizona*, 384 U.S. 436 (1966) established the rule that statements of the accused, obtained during custodial interrogations, may not be used at trial unless certain "procedural safeguards effective to secure the privilege against self-incrimination" are employed.  *Id.* at 444.  Such safeguards have come to be known as the prophylactic *Miranda* warning.  *New York v. Quarles*, 467 U.S. 649, 654 (1984).  The circumstances under which Harris was asked if he had a weapon amounted to a custodial situation within the meaning of *Miranda*.[2]  *See* 2 Wayne R. LaFave, Gerald H. Israel & Nancy J. King, Criminal Procedure 536 (2d ed. 1999).

While *Miranda* warnings are typically required before seeking, under the circumstances of a custodial interrogation, any statement from the accused, the Supreme Court of the United States held in *Quarles* that there is a "public safety" exception to the *Miranda* requirement.  467 U.S. at 655-56.  In *Quarles*:

> Officer Frank Kraft and Officer Sal Scarring were on road patrol in Queens, N.Y., when a young woman approached their car. She told them that she had just been raped by a black male, approximately six feet tall,

---

[2] According to the arresting officer, Harris was not free to leave at the time he was stopped by police.  (D.I. 2 at A-71).

who was wearing a black jacket with the name "Big Ben" printed in yellow letters on the back. She told the officers that the man had just entered an A & P supermarket located nearby and that the man was carrying a gun.

The officers drove the woman to the supermarket, and Officer Kraft entered the store while Officer Scarring radioed for assistance. Officer Kraft quickly spotted respondent, who matched the description given by the woman, approaching a checkout counter. Apparently upon seeing the officer, respondent turned and ran toward the rear of the store, and Officer Kraft pursued him with a drawn gun. When respondent turned the corner at the end of an aisle, Officer Kraft lost sight of him for several seconds, and upon regaining sight of respondent, ordered him to stop and put his hands over his head.

Although more than three other officers had arrived on the scene by that time, Officer Kraft was the first to reach respondent. He frisked him and discovered that he was wearing a shoulder holster which was then empty. After handcuffing him, Officer Kraft asked him where the gun was. Respondent nodded in the direction of some empty cartons and responded, "the gun is over there." Officer Kraft thereafter retrieved a loaded .38-caliber revolver from one of the cartons, formally placed respondent under arrest, and read him his Miranda rights from a printed card.

467 U.S. at 651-52. In the instant case, the police received a report from the owner of a home not far from Pockets, a liquor store, that there was a vehicle parked in her driveway that did not belong. (D.I. 2 at A-69). She observed several men had get out of the car and put on masks. (D.I. 2 at A-69). The caller told the police dispatcher that one of the men removed a long pipe from the car and placed it in his pants. (D.I. 2 at A-69). The caller also indicated that the men were walking in the direction of Pockets. (D.I. 2 at A-69). Based on that information, the police had reason to believe that Harris had a gun when they first approached him. Asking Harris if he had a weapon on his person before frisking him was, therefore, completely justified and Harris' rights under the Fifth Amendment were not violated when his affirmative response to the police question was

admitted at trial.  *United States v. Johnson*, 2004 WL 882151 (3d Cir. 2004)(Exhibit D).

Harris' claim, accordingly, is without merit and he is not entitled to relief.

*Claim Four: Ineffective assistance of Counsel*

Harris claims that his attorney, William T. Deely, Esq., rendered constitutionally

defective representation by not filing a timely notice of appeal.  Though Harris suggests

that his attorney did not file any appeal, his attorney instead filed a notice of appeal and

moved to withdraw under Supreme Court Rule 26(c).  *See Harris III*, order at ¶7.  Harris'

contention that Deely filed no appeal from the conviction is thus factually incorrect.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Harris'

suppression hearing, trial, and sentencing have been prepared. In the event that the Court

directs the production of any transcript, respondents cannot state with specificity when

such transcript would be available. However, respondents reasonably anticipate that such

production would take 90 days from the issuance of any such order by the Court.


                                          /s/ James T. Wakley
                                          Deputy Attorney General
                                          Department of Justice
                                          820 N. French Street
                                          Wilmington, DE 19801
                                          (302) 577-8500
                                          Del. Bar. ID No. 4612

DATE: April 13, 2007

Westlaw.

**H**

Harris v. State
Del.Supr.,2005.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Bryant HARRIS, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 193, 2004.**

Submitted Jan. 31, 2005.
Decided April 11, 2005.

**Background:** Defendant was convicted in the Superior Court of the State of Delaware, in and for New Castle County, Cr. ID 0305005293, of attempted robbery, conspiracy, and possession of a firearm. Defendant appealed.

**Holdings:** The Supreme Court held that:

(1) defendant failed to establish the affirmative defense of renunciation;

(2) police had probable cause to stop defendant, and

(3) *Miranda* warnings were not required during stop.

Affirmed.

**[1] Criminal Law 110 ⌛569**

110 Criminal Law
    110XVII Evidence
        110XVII(V) Weight and Sufficiency
            110k569 k. Defenses in General. Most Cited Cases
Defendant charged with attempted robbery failed to establish the affirmative defense of renunciation; it was within the judge's discretion to credit the officer's testimony that defendant was walking toward, not away from, the target liquor store at the time of his arrest, and he still had a stocking cap like that of other suspects and shotgun in his possession.

**[2] Arrest 35 ⌛63.5(5)**

35 Arrest
    35II On Criminal Charges
        35k63.5 Investigatory Stop or Stop-And-Frisk
            35k63.5(3) Grounds for Stop or Investigation
                35k63.5(5) k. Particular Cases. Most Cited Cases
Police had reasonable, articulable suspicion to stop defendant as an attempted robbery suspect; a concerned citizen had called police to report four strangers exiting an unfamiliar vehicle, pulling stocking masks over their heads in a driveway by a liquor store that had been robbed on prior occasions, one of the men appeared to be carrying a large pipe, police saw defendant walking along the poorly-lit highway in the direction of the liquor store wearing coveralls and a knit cap like the ones the caller had described.

**[3] Criminal Law 110 ⌛412.2(3)**

110 Criminal Law
    110XVII Evidence
        110XVII(M) Declarations
            110k411 Declarations by Accused
                110k412.2 Right to Counsel; Caution
                    110k412.2(3) k. Informing Accused as to His Rights. Most Cited Cases
Defendant's *Miranda* rights were not violated when officers looking for attempted robbery suspects asked defendant if he was armed before attempting a patdown search; *Miranda* warnings are required during custodial interrogations but are not required before an investigatory stop.

Court Below-Superior Court of the State of Delaware, in and for New Castle County, Cr. ID 0305005293.

Before BERGER, JACOBS, and RIDGELY, Justices.

*ORDER*

**\*1** This 11th day of April 2005, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1) The defendant-appellant, Bryant Harris, was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

871 A.2d 1128                                                                                                              Page 2
871 A.2d 1128, 2005 WL 850421 (Del.Supr.)
**(Cite as: 871 A.2d 1128)**

convicted of attempted robbery, conspiracy, and possession of a firearm during the commission of a felony following a Superior Court bench trial. The Superior Court sentenced Harris to ten years in prison followed by three years at decreasing levels of supervision. This is Harris' direct appeal.

(2) Harris' counsel on appeal has filed a brief and a motion to withdraw pursuant to Rule 26(c). Harris' counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Harris' attorney informed him of the provisions of Rule 26(c) and provided Harris with a copy of the motion to withdraw and the accompanying brief. Harris also was informed of his right to supplement his attorney's presentation. Harris has raised four issues for this Court's consideration. The State has responded to Harris' points, as well as the position taken by Harris' counsel, and has moved to affirm the Superior Court's judgment.

(3) The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[FN1]

> FN1. *Penson v. Ohio,* 488 U.S. 75, 83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

(4) The trial record fairly supports the following version of events: On May 7, 2003, Harris and three codefendants, Marques Comer, Paul Nocho, and Dekelvin Townsend, met at Comer's apartment and formulated a plan to rob Pocket's Liquor Store in New Castle. The four men took a shotgun and four knit caps and drove to the liquor store in Comer's mother's car. They parked the car in a private, secluded driveway near the liquor store. Nocho testified at trial that he walked into the store and made a purchase. When he returned, he told Harris there were two clerks in the store. Harris proceeded toward the store with the shotgun hidden in his overalls and the knit cap on his head. Nocho returned

to the car to wait as the get-away driver. Nocho testified that Townend's role was to act as the look-out. Comer's job was to collect the money while Harris wielded the shotgun.

(5) Unbeknownst to the four men, a concerned citizen telephoned police about the unfamiliar vehicle parked in her driveway. The caller identified four men exiting the vehicle pulling stocking caps over their faces and noted that one of the men appeared to be carrying a long pipe. The caller stated that the men were walking in the direction of the liquor store. Several police vehicles arrived on the scene within minutes. As police arrived, they saw Harris walking along Route 13 in the direction of the liquor store. With guns drawn, police officers stopped Harris and asked him if he had any weapons, to which Harris responded "yes." The officers patted him down and discovered the shotgun.

**\*2** (6) Harris testified at his bench trial. He admitted to the judge that he conspired with the others to rob the liquor store. He admitted that he assigned each coconspirator a specific role in the robbery plan. He admitted to driving with the others to the area near the liquor store in furtherance of their conspiracy. He also admitted to carrying the shotgun. Harris' defense, however, was that by the time Nocho had returned from casing the liquor store, Harris already had decided to abandon the robbery plan and had started walking away from the liquor store. Harris asserted that the arresting officer lied when he testified that Harris was walking in the direction of the liquor store when police stopped him. The Superior Court judge concluded, however, that the prosecution had proven its case beyond a reasonable doubt and that Harris had failed to prove the affirmative defense of renunciation by a preponderance of the evidence. Harris was convicted of all three charges.

(7) Harris raises four issues in this direct appeal. First, he claims that the State failed to prove the charges beyond a reasonable doubt. Second, he asserts that the police lacked reasonable suspicion when they first stopped him. Third, he claims that the officers violated his Miranda rights when, with their weapons drawn, they asked him if he had any weapons. Finally, Harris alleges that his trial attorney provided ineffective assistance of counsel. We address these claims *seriatim.*

[1] (8) Harris first argues that the State failed to prove all of the elements of attempted robbery beyond a reasonable doubt because Harris had

871 A.2d 1128
871 A.2d 1128, 2005 WL 850421 (Del.Supr.)
**(Cite as: 871 A.2d 1128)**

Page 3

renounced the robbery plan before the police arrived. The affirmative defense of renunciation requires a defendant to establish a complete and voluntary abandonment of the criminal purpose.[FN2] The definition of "renunciation" in Section 541(c)(1) of Title 11 specifically excludes circumstances where a defendant abandons his plans to commit a crime because of events that lead the defendant to believe that his detection or apprehension is more probable. [FN3] In other words, abandonment of a criminal purpose is not voluntary simply because a defendant believes he might be caught. Under the circumstances of this case, we find no error in the Superior Court's conclusion that Harris had failed to establish the affirmative defense of renunciation by a preponderance of the evidence. It was entirely within the judge's discretion to credit the officer's testimony that Harris was walking toward, not away from, the liquor store at the time of his arrest.[FN4] Moreover, Harris still had the stocking cap and shotgun in his possession. We find that the State's evidence was sufficient as a matter of law to prove all three criminal charges beyond a reasonable doubt.

FN2. 11 Del. C. § 541 (2001).

FN3. *Id.* § 541(c)(1).

FN4. *Tyre v. State,* 412 A.2d 326, 330 (Del.1980).

[2] (9) Harris' second claim is that the Superior Court erred in denying his suppression motion based on the officers' lack of reasonable suspicion to stop him. In determining whether police had reasonable, articulable suspicion to conduct an investigatory *Terry* [FN5] stop, we must examine the totality of the circumstances, through the eyes of a reasonable, trained police officer in the same circumstances combining objective facts with a reasonable officer's subjective interpretation of those facts.[FN6] In this case, a concerned citizen called police around 11:30 p.m. to report suspicious activity as it was occurring in her driveway. The caller described four strangers exiting an unfamiliar vehicle, pulling stocking masks over their heads. The driveway was located in a high-crime area adjacent to a liquor store that had been robbed on prior occasions. The caller stated that one of the men appeared to be carrying a large pipe. When police arrived, they saw Harris walking along the poorly-lit highway in the direction of the liquor store. He was wearing coveralls and a knit cap on a May evening. Under these circumstances, we find no error in the Superior Court's conclusion that police

had reasonable, articulable suspicion to stop Harris.

FN5. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (authorizing brief investigatory stops by law enforcement officers based on reasonable suspicion of criminal activity).

FN6. *Woody v. State,* 765 A.2d 1261, 1263 (Del.2001).

*3 [3] (10) Furthermore, given the caller's statement that one of the men appeared to have a weapon, it was permissible for the officers to conduct a limited patdown search of Harris for weapons in conjunction with their investigatory stop.[FN7] In this case, the officers first asked Harris if he was armed before attempting a patdown search. Harris' contention that this question violated his *Miranda* [FN8] rights is without merit. *Miranda* warnings are required during custodial interrogations [FN9] but are not required before an investigatory stop under *Terry,* as occurred here. Accordingly, we find no merit to Harris' third argument.

FN7. *See Purnell v. State,* 832 A.2d 714, 720 (Del.2003) (holding that, so long as an officer is entitled to make a *Terry* stop and has reason to believe the suspect is armed, the officer may conduct a limited patdown search of the suspect's person for weapons).

FN8. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that police officers may not subject citizens to custodial interrogations without first advising them of certain rights protecting their Fifth Amendment privilege against self-incrimination).

FN9. *Marine v. State,* 607 A.2d 1185, 1192 (Del.1992).

(11) Harris' final contention is that his trial attorney provided ineffective assistance of counsel. The Court, however, will not consider this issue for the first time on direct appeal.[FN10]

FN10. *Wright v. State,* 513 A.2d 1310, 1315 (Del.1986).

(12) This Court has reviewed the record carefully and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

871 A.2d 1128
871 A.2d 1128, 2005 WL 850421 (Del.Supr.)
**(Cite as: 871 A.2d 1128)**

has concluded that Harris' appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Harris' counsel has made a conscientious effort to examine the record and the law and has properly determined that Harris could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

Del.Supr.,2005.
Harris v. State
871 A.2d 1128, 2005 WL 850421 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                      Page 1
Not Reported in A.2d, 2006 WL 1679455 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

---

State v. Harris
Del.Super.,2006.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware,New Castle County.
STATE of Delaware
v.
Ryant N. HARRIS a/k/a Lynn Harris, Defendant.
**I.D. # 0305005239.**

Submitted: March 22, 2006.
Decided: June 13, 2006.

Upon Defendant's Motion for Postconviction Relief.
**SUMMARILY DISMISSED.**

Stephen M. Walther, Esquire, Deputy Attorney
General, Department of Justice, Wilmington,
Delaware, Attorney for the State.
Ryant N. Harris a/k/a Lynn Harris, Smyrna,
Delaware, pro se.

*ORDER*

COOCH, J.

**\*1** This 13th day of June, 2006, upon consideration
of Defendant's motion for postconviction relief, it
appears to the Court that:

1. Ryant N. Harris a/k/a Lynn Harris ("Defendant")
[FN1] was found guilty and convicted, after a bench trial
on February 19, 2004, of Attempted Robbery First
Degree, Possession of a Firearm During the
Commission of a Felony, and Conspiracy Second
Degree. On April 23, 2004, Defendant was sentenced
to a total of 10 years at Level V, followed by 3 years
at decreasing levels of supervision. Defendant
appealed his conviction on four grounds: (1) that the
State failed to prove its case beyond a reasonable
doubt, (2) that the police lacked reasonable suspicion
for the initial stop, (3) that his Miranda rights were
violated when the police, with weapons drawn, asked
Defendant if he had any weapons on him, and (4) that
trial counsel provided ineffective assistance. [FN2] On
April 11, 2005, the Delaware Supreme Court
affirmed the convictions.[FN3]

FN1. It is not clear from the record or the

caption precisely what Defendant's name is.

FN2. *Harris v. State,* 2005 WL 850421
(Del.Supr.).

FN3. *Id.* (affirming trial court's decisions
regarding the first three issues brought by
defendant on appeal and declining to
consider defendant's ineffective assistance
of counsel claim).

2. Defendant filed this timely motion for
postconviction relief pursuant to Superior Court
Criminal Rule 61 on March 22, 2006. Defendant
alleges similar, if not the exact same, grounds for
postconviction relief as the grounds brought upon
direct appeal. These grounds are set forth here *in
toto:*
1. State fail [sic] to produce substantive evidence
and/or prove their case beyond a reasonable doubt
and meet the prerequisite's [sic] to support the
conviction under the corpus delicti rule and the said
statures [sic] of title 11301 and 222(5).
Supporting facts: Whether the state failed to provide
[sic] their case beyond a reasonable doubt under the
corpus delicti rule to support the conviction for
attempted robbery with a deadly weapon charge. In
their case in chief deprived the defendant to a fair
trial under the 5th Amendment plus denial of his due
process rights under the 14th Amendment.
2. Officers lack for investigatory stop.
Supporting facts: Whether the police had reasonable
and articulable suspicion for investigatory stop of the
defendant, violated his usca Amend 4[sic] and Del, C
Annotated Articule 1[sic]-6 of title 11 Del c,
1902[sic].
3. Officer failed to read Miranda Right time of arrest
[sic].
Supporting facts: Whether the defendant 5th
Amendment Right were violated by police when
failed to administer defendant Miranda warning [sic]
at time he was arrested and taken into custody.
4. Ineffective assistance of counsel.
Supporting facts: Whether counsel was ineffective
when he failed to file a timely notice of appeal, which
is his continued obligation pursuant to the Supreme
Court rule 26A [sic] in violation of his 6th
Amendment plus 14th Amendment due process
rights.

Upon review of Defendant's motion, all of the above

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1679455 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 2

grounds are conclusory and, thus, the motion is **SUMMARILY DISMISSED.**

3. Superior Court Criminal Rule 61(d)(4) provides that "[i]f it plainly appears from the motion for postconviction relief and the record of prior proceedings in this case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified." Defendant's motion for postconviction relief will be summarily dismissed where no facts supporting Defendant's contentions are offered and the claims are conclusory.[FN4]

> FN4. *State v. Cooper, 2001 WL 1729147 (Del.Super.)* (summarily dismissing defendant's claims of false testimony and ineffective assistance of counsel as defendant did not offer supporting facts and the claims were conclusory). *See also Jordan v. State, 1994 WL 466142 (Del.Supr.); State v. Brittingham, 1994 WL 750341, * 2 (Del.Super.)* (citing *Younger v. State,* 580 A.2d at 556 (holding that conclusory allegations are legally insufficient to prove ineffective assistance of counsel)).

**\*2** 4. Regardless of the fact that the grounds brought by Defendant in this instant motion are almost mirror images of the issues brought on direct appeal, Defendant's contentions here are completely conclusory as they are not supported by any facts in the record nor by any case law brought to the Court's attention by Defendant. They are merely reiterations of the issues already decided by the Delaware Supreme Court. Thus, Defendant's first three claims are **SUMMARILY DISMISSED.**

5. The one issue not decided by the Supreme Court, Defendant's ineffective assistance of counsel claim, is also conclusory because it points to no facts or case law in support. Thus, Defendant fourth ground for postconviction relief is conclusory and is **SUMMARILY DISMISSED.**

6. For the reasons stated, Defendant's Motion for Postconviction Relief is **SUMMARILY DISMISSED.**

**IT IS SO ORDERED.**

Del.Super.,2006.
State v. Harris

Not Reported in A.2d, 2006 WL 1679455 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

909 A.2d 594                                                                                                    Page 1
909 A.2d 594, 2006 WL 2714447 (Del.Supr.)
**(Cite as: 909 A.2d 594)**

**H**

Harris v. State
Del.Supr.,2006.
(The decision of the Court is referenced in the
Atlantic Reporter in a 'Table of Decisions Without
Published Opinions.')
Supreme Court of Delaware.
Lynn HARRIS, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 321, 2006.**

Submitted: Aug. 15, 2006.
Decided: Sept. 22, 2006.

Court Below-Superior Court of the State of
Delaware, in and for New Castle County, Cr. ID No.
0305005293.

Before STEELE, Chief Justice, HOLLAND and
RIDGELY, Justices.

***ORDER***
MYRON T. STEELE, Chief Justice.
**\*1** This 22nd day of September 2006, upon
consideration of the appellant's opening brief and the
appellee's motion to affirm pursuant to Supreme
Court Rule 25(a), it appears to the Court that:

(1) The defendant-appellant, Lynn Harris, filed an
appeal from the Superior Court's June 13, 2006 order
summarily dismissing his motion for postconviction
relief pursuant to Superior Court Criminal Rule 61.
The plaintiff-appellee, the State of Delaware, has
moved to affirm the judgment of the Superior Court
on the ground that it is manifest on the face of the
opening brief that the appeal is without merit. We
agree and AFFIRM.

(2) In February 2004, Harris was found guilty, in a
Superior Court bench trial, of Attempted Robbery in
the First Degree, Conspiracy and Possession of a
Firearm During the Commission of a Felony. He was
sentenced to a total of 13 years of Level V
incarceration, to be suspended after 10 years for
probation. This Court affirmed Harris' convictions
and sentences on direct appeal. FN1

FN1. *Harris v. State,* Del.Supr., No. 193,

2004, Jacobs, J. (Apr. 11, 2005).

(3) In this appeal, Harris claims that: a) the State
failed to prove its case beyond a reasonable doubt; b)
the police lacked reasonable suspicion to stop him; c)
the police failed to give him the proper Miranda
warnings before conducting a pat down search; and
d) his attorney provided ineffective assistance in the
direct appeal.

(4) Because Harris' first three claims were already
presented in his direct appeal, he is foreclosed from
presenting them again in this proceeding unless he
can demonstrate that reconsideration of the claims is
warranted in the interest of justice. FN2 In the absence
of any such evidence, Harris' first three claims are
unavailing.

FN2. Super. Ct.Crim. R. 61(i)(4).

(5) Harris next claims that his counsel provided
ineffective assistance, specifically, by failing to file a
timely notice of appeal, by filing a motion to
withdraw along with his opening brief, and by failing
to argue that the State failed to prove its case, that the
police lacked reasonable suspicion to stop him and
that the police failed to give him the proper Miranda
warnings.

(6) In order to prevail on his claims of ineffective
assistance of counsel, Harris must demonstrate that
his counsel's representation fell below an objective
standard of reasonableness and that, but for his
counsel's unprofessional errors, there is a reasonable
probability that the outcome of the proceedings
would have been different. FN3 Although not
insurmountable, the Strickland standard is highly
demanding and leads to a "strong presumption that
the representation was professionally reasonable."
FN4

FN3. *Strickland v. Washington,* 466 U.S.
668, 688, 694 (1984).

FN4. *Flamer v. State,* 585 A.2d 736, 753
(Del.1990).

(7) As to Harris' first claim of ineffective assistance,
the record reflects that, after Harris himself filed a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

909 A.2d 594                                                                                                              Page 2
909 A.2d 594, 2006 WL 2714447 (Del.Supr.)
**(Cite as: 909 A.2d 594)**

notice of appeal in this Court, the Clerk instructed Harris' attorney to file a formal notice of appeal by a date certain. Because Harris' attorney did as the Clerk instructed, Harris' first contention is without merit. As to Harris' two remaining claims of ineffective assistance, the record reflects that a no-merit brief was filed on Harris' behalf under Supreme Court Rule 26(c), including the points that Harris wished this Court to consider. Ultimately, however, this Court determined that Harris' direct appeal was without merit. Harris has, thus, failed to demonstrate any error on the part of his counsel that prejudiced his case.

**\*2** (8) It is manifest on the face of Harris' opening brief that the appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Del.Supr.,2006.
Harris v. State
909 A.2d 594, 2006 WL 2714447 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

95 Fed.Appx. 448                                                                                              Page 1
95 Fed.Appx. 448, 2004 WL 882151 (C.A.3 (Pa.))
**(Cite as: 95 Fed.Appx. 448)**

**H**
U.S. v. Johnson
C.A.3 (Pa.),2004.
This case was not selected for publication in the
Federal Reporter.NOT PRECEDENTIAL Please use
FIND to look at the applicable circuit court rule
before citing this opinion. Third Circuit Local
Appellate Rule 28.3(a) and Internal Operating
Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3
IOP APP I 5.3.)
        United States Court of Appeals,Third Circuit.
             UNITED STATES of America,
                            v.
     Tyrone JOHNSON a/k/a Tariq Shabazz Tariq
      Shabazz aka Tyrone Johnson, Appellant.
                     No. 03-3796.

     Submitted Under Third Circuit LAR 34.1(a) April 16,
                          2004.
              Decided April 23, 2004.

**Background:**    Defendant was convicted in the
United States District Court for the Eastern District
of Pennsylvania, William H. Yohn, Jr., J., of
possession of a firearm by a convicted felon, and was
sentenced to 46 months in prison followed by three
years supervised release.

**Holdings:**    Defendant appealed. The Court of
Appeals, Lay, Circuit Judge, held that:

(1) face-to-face tip from informant had sufficient
indicia of reliability to provide police officers with a
reasonable suspicion justifying stop and frisk of
defendant, and

(2) officers' question to defendant, "do you have a
gun?" fell under the public safety exception to the
Miranda rule.

Affirmed.
West Headnotes
**[1] Arrest 35 ☞63.5(5)**

35 Arrest
    35II On Criminal Charges
        35k63.5 Investigatory Stop or Stop-And-Frisk
            35k63.5(3)    Grounds    for    Stop    or

Investigation
            35k63.5(5)   k.   Particular   Cases.   Most
Cited Cases
Face-to-face tip from informant had sufficient indicia
of reliability to provide police officers with a
reasonable suspicion that defendant had engaged in
criminal activity and was currently armed and
dangerous, such that the officers did not violate
defendant's Fourth Amendment rights in making an
investigatory stop and frisk to verify the validity of
the informant's complaint; the informant remained at
the scene during the stop and was therefore
accountable to both defendant and the police officers
if his complaint turned out to be unfounded.
U.S.C.A. Const.Amend. 4.

**[2] Criminal Law 110 ☞412.2(3)**

110 Criminal Law
    110XVII Evidence
        110XVII(M) Declarations
            110k411 Declarations by Accused
                110k412.2 Right to Counsel; Caution
                    110k412.2(3)   k.   Informing   Accused
as to His Rights. Most Cited Cases
Police officers' question to defendant, "do you have a
gun?" fell under the public safety exception to the
Miranda rule; the question was clearly intended to
secure the officers' safety and the safety of the public,
and not to obtain evidence useful in convicting
defendant.

Appeal from the United States District Court for the
Eastern District of Pennsylvania.  (D.C. Criminal No.
02-cr-00731).  District Judge:  Honorable William H.
Yohn, Jr.

Maureen Barden, Office of United States Attorney,
Philadelphia, PA, for Appellee.
Tariq K. El-Shabazz, Philadelphia, PA, pro se.

Before RENDELL, STAPLETON and LAY,[FN*]
Circuit Judges.

        FN* Honorable Donald P. Lay, Senior
        Circuit Judge for the Eighth Circuit, sitting
        by designation.

                    OPINION OF THE COURT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 Fed.Appx. 448                                                                                    Page 2
95 Fed.Appx. 448, 2004 WL 882151 (C.A.3 (Pa.))
**(Cite as: 95 Fed.Appx. 448)**

LAY, Circuit Judge.

**\*\*1** Tyrone Johnson was found guilty of one count of possession of a firearm by a convicted felon and sentenced to forty-six months in prison followed by three years supervised release. He appeals the District Court's denial of his motion to suppress evidence on the basis that the evidence was obtained and admitted at trial in violation of his Fourth and Fifth Amendment rights. We will affirm.

## I. BACKGROUND

On the afternoon of July 10, 2001, an individual named David Nurse called 911. Nurse explained that on June 18, 2001, he had been involved in a "road rage" incident in which an individual in a Range Rover with a license plate including the numbers "7222" had pointed a gun at him and threatened him. Nurse further explained that the very same Range Rover was presently parked at 1900 Rittenhouse Square in Philadelphia. Officers Hill, O'Malley, and Cortes responded to the call. Sergeant Hill talked with Nurse, who was at the scene. Nurse explained to Hill the same information he had given the 911 operator. The officers observed that Nurse appeared to be agitated and upset.

The three officers then approached Johnson's Range Rover with their guns drawn, observing that there was an individual seated in the driver's seat of the vehicle. They asked Johnson to show his hands. Johnson rolled down the window. They asked Johnson to get out of the vehicle, which he did. The officers then **\*450** frisked Johnson. Either immediately before or during this initial frisk of Johnson, the officers asked if Johnson had a gun, and Johnson replied that he did. Officer O'Malley then found a loaded nine millimeter semiautomatic pistol in Johnson's rear waistband.

Johnson was arrested and charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Johnson filed an oral motion to suppress both the physical evidence of the gun and his statement to police that he had a gun. After a hearing, this motion was denied. On May 29, 2003, after a two-day trial, a jury found Johnson guilty. The District Court then sentenced him to forty-six months imprisonment, followed by three years supervised release. Johnson now appeals the District Court's denial of his motion to suppress, arguing that the officers did not have reasonable suspicion to stop and frisk him, and that the admission of his response to

the question, "do you have a gun?" violated his Fifth Amendment right against self-incrimination.

## II. ANALYSIS

We review the District Court's denial of Johnson's motion to suppress evidence "for clear error as to the underlying factual findings and exercise [ ] plenary review of the District Court's application of the law to those facts." *United States v. Perez,* 280 F.3d 318, 336 (3d Cir.2002).

It has long been established, under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and subsequent cases, that an officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion" of criminal activity. *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). It is similarly well-established that an informant's tip can provide the reasonable suspicion necessary to support a stop and frisk, if it contains a sufficient "indicia of reliability." *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ("[W]e reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person.").

**\*\*2** In assessing whether an informant's tip is sufficiently reliable to provide reasonable suspicion, we must look to the "totality of the circumstances." *See Illinois v. Gates,* 462 U.S. 213, 230-35, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). While Johnson is correct to note that an anonymous tip over the telephone is not itself enough to warrant a stop and frisk under *Terry, see Florida v. J.L.,* 529 U.S. 266, 268-74, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the Supreme Court has recognized that a stop and frisk can be based on a tip from a known informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated. *See Adams,* 407 U.S. at 146-47.

In *Adams,* an officer was approached by a known informant, who told him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. *Id.* at 144-45. The officer approached the vehicle and asked the occupant to open the door. *Id.* at 145. When the occupant rolled down the window instead, the officer reached inside the car and removed the occupant's gun from his waistband. *Id.* The Supreme Court held that the officer acted

95 Fed.Appx. 448                                                                        Page 3
95 Fed.Appx. 448, 2004 WL 882151 (C.A.3 (Pa.))
**(Cite as: 95 Fed.Appx. 448)**

properly in responding to the informant's tip. *Id.* at 146. The Court distinguished this case from an anonymous telephone tip, stressing that the informant was known to the officer, was at the scene, and "might have been subject to immediate arrest for making a false complaint had [the officer's] investigation**451** proved the tip incorrect." *Id.* at 147. The Court therefore concluded that "the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." *Id.* The Court also held that the frisk was justified because the officer had "reason to believe that the suspect [was] armed and dangerous." *Id.* at 146 ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, he may conduct a limited protective search for concealed weapons.") (quotations and citation omitted).

This court has recognized these principles and applied them to uphold a stop and frisk where the informant was far less reliable than in the instant case. *See United States v. Valentine,* 232 F.3d 350, 353-55 (3d Cir.2000). In *Valentine,* two officers patrolling a high-crime neighborhood were approached by an individual who explained he had just seen a man with a gun. *Id.* at 352. The informant described the gunman but would not identify himself, stating that he feared retribution from the armed man and entanglement with the police. *Id.* at 352-53. The police did not further question or detain the informant, who promptly disappeared, but went in search of the gunman, whom they found and proceeded to stop and frisk, finding a gun. *Id.* at 353. On appeal, we found the tip to be reliable, distinguishing *Florida v. J.L.* on the basis that a tip given face to face is more reliable than an anonymous telephone call, even when the informant does not identify himself. *Id.* at 354. We supported this holding by reasoning that: 1) the officers had the opportunity to assess the informant's credibility and demeanor; 2) the informant was at risk for retaliation by the armed man, who was nearby, making it less likely he would lie; and 3) the informant faced retaliation from the police, who could quickly confirm the tip and knew what the informant looked like. *Id.* at 354-55.

**3 [1] In light of this precedent, we are compelled to find that the face-to-face tip from Nurse had sufficient indicia of reliability to provide the officers with a reasonable suspicion that Johnson had engaged in criminal activity and was currently armed and dangerous.[FN1] Just as in *Adams* and *Valentine,* the

officers here were justified in relying on the tip from Nurse, who remained at the scene during the stop and was therefore accountable to both Johnson and the police officers if his complaint **452** turned out to be unfounded. Accordingly, the officers did not violate Johnson's Fourth Amendment in making an investigatory stop and frisk to verify the validity of Nurse's complaint, and the District Court correctly denied Johnson's motion to suppress.

> FN1. Johnson also argues that the stop and frisk was impermissible because he was not engaged in any criminal activity at that time. We note, however, that the road rage incident occurring three weeks prior, as related by Nurse, "involv[ed] a threat to the public safety," and was sufficient to support the stop and frisk. *See United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) ("Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes."). Additionally, even without reference to *Hensley,* we believe that Nurse's tip gave the officers reasonable suspicion that Johnson was armed and dangerous at that time. *See Valentine,* 232 F.3d at 356-57 (holding that while mere possession of a gun is legal, and therefore will not support a stop and frisk, possession of a gun plus surrounding circumstances suggesting criminal activity will support a stop and frisk). As we stated in *Valentine,* we believe that "given the large number of potential crimes and the danger posed by an armed criminal, we think that if the police officers had done nothing and continued on their way after receiving the informant's tip, the officers would have been remiss." *Id.* at 356.

[2] Johnson also argues that his response to the officers' question, "do you have a gun?" was improperly admitted into evidence in violation of the Fifth Amendment because he was not read his *Miranda* rights before being asked the question. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16

95 Fed.Appx. 448                                                                    Page 4
95 Fed.Appx. 448, 2004 WL 882151 (C.A.3 (Pa.))
**(Cite as: 95 Fed.Appx. 448)**

L.Ed.2d 694 (1966).    We find, however, that the
District Court was correct to hold that the officers'
question falls under the "public safety" exception of
*New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626,
81 L.Ed.2d 550 (1984).    In *Quarles,* the Court held
that answers given to questions asked prior to reading
a suspect his *Miranda* warnings will not be excluded
from evidence if the purpose of the officers' question
was "to secure their own safety or the safety of the
public" and not "designed solely to elicit testimonial
evidence from a suspect." *Id.* at 659.    Here, we think
Johnson's statement was properly admitted because
the question was clearly intended to secure the
officers' safety and the safety of the public, and not
to obtain evidence useful in convicting Johnson.


### III. CONCLUSION

For the above reasons, the decision of the District
Court will be AFFIRMED.

C.A.3 (Pa.),2004.
U.S. v. Johnson
95 Fed.Appx. 448, 2004 WL 882151 (C.A.3 (Pa.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.