IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

LYNN HARRIS,

    Petitioner,

       V.

THOMAS CARROLL, Warden et. al.,

    Respondants.

Civ. Act. No. 06-789 ***

FILED

JUN 19 2007

LOScann

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PETITIONER'S POINTS AND AUTHORITIES TO PETITIONERS TRAVERS

Point 1. The State Court's Unreasonable Determination of Facts Necessary To The Disposition of Grounds One, Two and Three.

    The reasonableness of the State Courts fact determination on the issue of whether police had reasonable articulate suspicion is frustered in several respects. One is that the Court relied on "hindsight". The State Court manipulated the facts discovered after Petitioner's seizure to justify the officers reasonable suspicion that criminal activity was present. Two is the Court's minipulative use of "terminology" characterizing an "anonymous tipster's" identity into that of an anonymous "concerned citizen". Three is the manipulative use of the terminology that the anonymous 911 caller used in their discription, and the actual evidence seized in that the Court replaces the 911 callers discriptions with those of the evidence

Petitioners Points

Page 2

recovered and described in court testimony.

The "factual layout" of these types of cases always begins with the date and time of the 911 call. US v Robertson 90 F.3d 75 (3rd cir 1996); Florida v J.L. 529 US 266 (2000); Jones v State 745 A2d 856 (Del. 1999); Caldwell v State 770 A2d 522 (Del. 2001); Accord: US v Nash 2002 WL 31500920 (D. Del.); Riley v State 892 A2d 370 (Del 2006) (citing Woody v State 765 A2d 1257 (Del 2001); Purnell v State, 832 A2d 714 (Del 2003); Quarles v State 696 A2d 1334 (Del 1997); Cummings v State 765 A2d 945 (Del 2001). (However in the instant case it is readily apparent that the Delaware State Courts have accented the Petitioners guilt over his Constitutional Rights, adhering the the Machevellian primciple that the ends justify the means in this case where Petitioner accepted full responsibility for his actions by explaining to the judge what happened, the planning etc. It is disputed whether Petitioner renounced his participation.)

Using the "formula" the above Courts have used to determine the State of Delaware Terry stop codified in 11 Del C 3 1902. A state created right arbitrarily denied to Petitioner. Hicks v Florida 447 US 343 (1980). The "factual layout" consists of the following as in our Third Circuit Roberson, U.S. Supreme Courts J.L and Delaware Supreme Courts Jones cases. The questions presented in these cases all involve a "concerned citizens" anonymous tipster's 911 call discribing: "suspicious individuals", their "clothing descriptions", their "suspected activity"

Page 3

and the Third Circuit and State cases involved "high crime areas". In Robertson the Third Circuit was asked to decide the question, "whether an anonymous tip that contains only information readily observable at the time the tip is made may supply reasonable suspicion for a _Terry_ stop in absence of police observations of any suspicious conduct?" Our Third Circuit said No. The conduct that the police observed" in Robertson and Jones and the other cases cited above, is more on the suspicious side then the conduct exhibited by the Petitioner here at the time of his stop.

THE FACTS ON RECORD

On the evening of May 7, 2003, ~~an anonymous caller, who is identified as an unidentified "concerned citizen" at the time of the 911 telephone call,~~ a Delaware 911 operator dispatch recieved an anonymous call from a concerned citizen stating she was "concerned about an unfamiliar car parked ~~at~~ at the end of her driveway and several people got out of the car and pulled stocking masks over their faces, and one had put what appeared to be a pipe in their pants and went toward Pockets Tavern," according to recorn operator.

So far as the record reveals, at this specific point in time which is relevant to our inquiry, nothing is known about the informant. More important, there is no discription as to the number of these individuals, their height, weight, race, color or discription of their clothing, shoes, build characteristics or anything else, except for the "stocking masks" and "pants," and they were

Page 4

headed in the direction of Route 13, (one wonders if this informant
could have actually observed anyone walking outside at night
past the light from the lamp post located near the end of this
driveway.)

At approximately 11:30 pm, the informer's tip was relayed
over the police radio. Officer Slover responded to the call
and pulled up to a lone single person walking on the pedestrian
walk area of Route 13 within fifty feet of the intersection
governed by overhead turn signals that allows both cars and
pedestrians to cross Route 13 exactly where a small road
leads to the anonymous tipster's driveway, the other direction
leads to: (1) a housing development; (2) Beaver Brook Apts.;
(3) Langollan Apts. (name has changed since 2003).

This stretch of Route 13 has a steady amount of foot
traffic during the hours that petitioner was afoot here.
There are three public businesses open until One o'clock
am. They are a car wash, which is open 24/7 located
directly across the highway from the Liquor Store. The
Liquor Store, and across the parking lot a large Tavern
that has seven or eight billiard's tables, serves hot food
until one one-o'clock am, and of course alcohol. Many
of its patrons walk in from the Two Apt. complexes and
Housing Complexes all within one-quarter to one-third
of a mile, and significantly must cross Route 13 at the
exact location where petitioner was stopped by police.

According to officer Slovers testimony, Petitioner did not

page 5

attempt to flee, he was not lurking in the bushes and small
trees that line this 200 feet of pedestrian walk way, which
is about 12 feet in width. Petitioner was not wearing
pants, and did not have a "stocking" over his face. He was
not being elusive, nor was he running. The Officer Slover
did not say he observed a pipe, or a fire arm, nor did he
state Petitioner made any threatning or otherwise unusual
movements. And neither was he accompanied by several
other people. The police observed no indicia of criminal
activity.

At this point police got out of their marked patrol car.
~~and order Petitioner~~ ^ordered Petitioner to turn around^ ~~Petitioner with their guns drawn~~. As they approached him
they did not observe anything other than a man wearing
coveralls and a small knit cap, both of which are common
outer wear for a working man who may have been working
outside in early May evening and had just gotten off a
3 to 11 o'clock shift, or even doing yard work around the
house, or mechanic work on an automobile, lawn mower etc
in his garage or workshop. However, the police stopped
petitioner, ~~gave petition station~~ ^took control over his movement^ and asked him "Do you
have any weapons on you?" Petitioner was placed under
arrest and subsequently indicted for possession of a firearm
during the commission of a felony, attempted first degree
robbery, and Second degree conspiracy.

The State provided Petitioner with one of it's ineffective
counsels, who failed to investigate both the law and the facts

Page 6

in this case. Nevertheless, counsel moved to suppress the evidence seized by the police. Because of counsel's unfamiliarity of the area or location, counsel was unable to articulate some of the material facts above, his lack of investigation, a simple "drive through" investigation would have been sufficient. As a simple legal research on "anonymous tips" would have revealed the cases cited herein. And a simple review of 11 Del C § 1902 would have accomplished the same task.

Counsel filed a suppression motion that was unsuccessful and refused to appeal it to the Delaware ~~Supreme~~ Supreme Court despite an accessable amount of case law supporting his clients case that the State had a much stronger case but were reversed based on a lack of reasonable suspicion.

Counsel is deficient and Petitioner did not get a chance to get a "full and fair opportunity" to have the State Courts review his claim here. Kimmelman v Morrison 477 US

The "reasonableness of official suspicion must be measured by what the officers knew before they conducted their search" Florida v J.L # 529 US 266, 271 (2000) The Delaware Supreme Court articulated a two prong test in Quarles v State 626 A2d 1334, 1338 (Del 1993) The first prong consists of an officers objective observations in the totality of the circumstances of the "pattern or practice of behavior" of the lawbreaker. and the second prong is what inferences or deductions a trained officer could make which might elude an untrained person. Id at 1338.

Page 7

Specifically, there is no good-faith exception that would allow a police officer lacking reasonable suspicion to create that suspicion through an unjustified attempted detention." Jones v State 745 A2d at 864, In Jones the Court found that the Superior Court incorrectly distinguished the officers safety exception from the need for an articulate suspicion. Id at 856 n. 78. Other wise nearly every invasion of a persons privacy could be justified by arguing the police needed to protect themselves from harm. Knowles v Iowa 523 US 113, 119 (1998)

There is no evidence officer Slover faced a hostile person, or that officer faced a large number of people either. The record reflects no circumstances here that would give officer justification for believing Petitioner was armed and presently dangerous.

In fact, the officers observations "added nothing to" the anonymous tipsters and "did not corroborate or particularize" the tipsters statements except to find a single person, present and alone on a well traveled highway. The only thing the officer did was "guess." First, he relied exclusively on the anonymous tipsters information. Second, he made a "guess" that by chance the man walking down this streach of highway just might be one of the individuals from the car in the driveway. Officer certainly did not observe "a pattern of criminal behavior." There was no testimony that this area was the focus of special attention because of prior criminal

Page 8

activity either. It's a well known fact, most Liquor stores get robbed on occassion. There were no special police bullitions that police focus special attention on this area.

The location alone is insufficent suspicion that criminal activity is afoot. Particularly, on a busy highway surrounded by Apartment Complexes and Housing Developments. The fact that a person is walking through a "poorly lit" section of walkway certainly should not give rise to suspicious criminal activity, particularly where it is located between an intersection, that is well lit up and the Pockets Tavern and Car Wash parking lots which are very well lit up as well. The fact is that this area may have only been "poorly-lit" due to the extreme brightness at each end of this walkway, (or the possibility of a street light being out, although that may be irrelevant to the circumstances existing at this exact time) Location alone is insufficient suspicion. Cummings v State 765 A2d 945, 949 (Del 2001) (Police had responded to area several times for burglar alarms held not suspicious area) "It is well [established law] that a suspects presence in a high-crime area late at night is alone insufficient to constitute articable reasonable articulate suspicion" Jones at 871; Brown v Texas 443 US 47, 52 (1979) However, a suspects presence in a high crime area plus his flight from police is one factor that may be concidered in the totality of the circumstances

Page 9

in establishing reasonable suspicion. Jones supra.

 In the case here, Petitioner did not take flight.

Petitioner was on public property open to the public,
that is noted for regular flow of foot traffic to and
from the three businesses open at 11:30 pm that evening.
Officer Slover admits he immediately stopped ~~questioned the officer~~
~~with reach arrest~~, ~~aged seized~~ Petitioner, where he was not free to leave
~~his wagon~~, he relied exclusively on the radio dispatch
from an anonymous 911 call. There was no time for an
independent observation from this officer other then
"the location" and Petitioners "outer wear" which did not
specifically match the dispatch discription. Riley v State
892 A2d 370, 375-78 (Del 2006); Florida v JL supra.;
US v Roberson supra; Caldwell supra; US v Nash supra.

Had Petitioners Counsel filed a Direct Appeal citing the
facts from the record there is a reasonable probability the
out come would have been different, had Counsel did
any research on this issue. Had Counsel even performed
a "drive thru" investigation of this area (See attached
Exhibit A, an out line map of Route 13, Pockets, the Traffic
Signal lights, and the location of the driveway) Counsel could
have had a better grasp of these facts. Had Counsel performed
an interview of The Liquor Store employees, Pockets employees
and Car Wash Manger they would confirm the foot traffic
from the Apt and Housing Complexes nearby. Had Counsel
sat in the Liquor Store Parking Lot for an hour or two at
around 11 to 11:30 pm he would have independent evidence

Page 10

that there are customers entering all three businesses that do
wear "coveralls" and "caps" of all sorts, in May, June and
July. Had Counsel actually "walked" the stretch of Route 13
in question, he would have discovered that the only reason
this 200-300 feet section of walkway was "poorly-lit" is
because at the traffic light and at the parking lot on either
end is so powerfully "lit up" like a day at 12 noon", that
when one quickly passes each area, the "otherwise lit area"
area, just does not have the 6 or 20 "Halagen" lights
that the traffic area and Parking lot does.

The Counsels ~~failore~~ failure to perform ~~fact~~ investigation
on the elements at issue is defective performance sufficient
to undermine the confidence in the Petitioners conviction for
possession of a deadly weapon during the commission of a felony.
~~and attempt~~ Wiggins v Smith 539 US 510 (2003) (Counsels
failure to develop mitigating facts) 123 S.CT 2527, 2538-39;
Woodford v Viscott 537 US 19, 22-23 (2002) (To prove
prejudice, Petitioner must establish a "reasonable probability"
that but for counsels unprofessional errors, the result of the
proceeding would have been different. Strickland v Washington
688 us at 692 The Supreme Court rejected the proposition that
the Petitioner must prove [the more difficult std.] "more likely
than not" that the outcome would have been altered. Strickland
at 692; Woodford at 22-23.

The State Courts misapplied the "governing legal principle"
to a set of facts different from those of the case in which

page 11

the principle was announced." Wiggins 123 SCT at 2534-35
(citing) Williams v Taylor 529 US 362, 413 (2000) (unreasonable
application) see also: Lockyer v Andrade 538 US 63, 123
S.CT 1166, 1175 (2003) (citing Williams at 407).

State courts objective unreasonable in fact finding in
finding reasonable articulate suspicion, where Petitioner has
showed by clear and convincing evidence in his trial record
that the officer relied almost exclusively on an anonymous
911 tipster, and the State Court apparently supports this,
in Harris v State 871 A2d 1128 (Table) 2005 WL 850421 (Del.
Supr.) at *2 para.(9). (States Answer Exhibit A)

Had Counsel performed an adequate legal research
and marshalled the facts developed at trial there is a
"reasonable probability" the outcome on Petitioners Direct
Appeal would have been different as to the finding of
"reasonable articulate suspicion", possessed by officers at the
time before Petitioners initial seizure. Accord Taylor v.
MADDOX 366 F3d 992 (~~zzzz~~ 9th cir 2004) (Explains
AEDPA § 2254 (d)(2) authorization of federal Courts to
grant habeas relief in cases where the state court decision
"was based on an unreasonable determination of facts
in light of the evidence presented in the State Court
proceeding") Or to put it conversely, a federal court may not
second guess a state courts fact finding process unless, after
review of the state court record, it determines that the
state court was not merely wrong, but actually unreasonable.

page 12

Cf. Lockyer v. Andrad 538 US 63, 75 (2003)

Second § 2254 (d)(1) determination of a factual issue made by a state court shall be presumed to be correct unless that presumption of correctness may be rebutted only by clear and convincing evidence. This 2254 (d)(1) presumption of correctness only comes into play once the state court's fact findings survive any intrinsic challenge; they do apply to a ~~challenge~~ challenge that is governed by the deference implicit in the "unreasonable" determination" standard of § 2254 (d)(2).

This federal court's review standard under § 2254 (d)(2) is whether the finding of "reasonable articulate suspicion" "was based on an unreasonable determination of the ~~facts~~ facts in light of the evidence presented in the State Court proceeding." " Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination (ie: anonymous 911 call) and, when guided by AEDPA, conclude the decision was unreasonable." Taylor v. Maddox supra (citing) Miller-EL v. Cockrell, 537 US 322, 340 (2003). Indeed, the U.S. Supreme Court and Circuit Courts have all found the standard met. See Wiggins at 2538-39 (citing cases)

As noted, intrinsic challenges to State court findings come in several flavors under the "unreasonable determination" standard § 2254 (d)(2) each presenting it's own set of considerations. No doubt the simplest is the situation where the state court should have made a finding of fact but neglected to do so. (anonymous "concerned citizen")

page 13

In that situation, the state courts factual determination is perfectly unreasonable and there is nothing to which the presumption of correctness can attach. Wiggins at 2539-40.

Or much like the case at bar, a somewhat different set of considerations applies where the state court does make factual findings, but does so under a misapprehension as to the legal standard. Taylor v Maddox supra (cites ommitted)

~~Obvious~~ Obviously, where the State courts legal error infects the fact-finding process [particularly in a bench trial] the resulting factual determination will be unreasonable and no presumptions of correctness can attach to it. Taylor v Maddox.

Similarly, where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to Petitioners claim, that misapprehension can fatally undermine the fact finding process, rendering the resulting finding unreasonable. See e.g. Wiggins at 2538-39.

And, as the Supreme Court in Miller-EL noted, the state court fact finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports Petitioners claim. Miller-EL 537 US at 346. while the state courts are not required to address every jit and tittle of proof suggested to them, nor need they make detailed findings addressing all of the evidence before them. Id. at 347

To fatally undermine the state fact-finding process, and render the resulting finding unreasonable, the overlooked or ignored

Page 14

evidence must be highly probative and central to Petitioners claim. In other words, the evidence in question must be sufficient to support Petitioners claim when considered in the context of the full record bearing on the issue presented in the habeas petition. Taylor v Maddox supra But failure to consider key aspects of the record is a defective fact finding process. Miller - EL at 346.

Petitions claim above meets all the criteria cited above. Please review and fully incorporate Petitioners complete Trial record transcripts as part of this claim.

Ineffective Assistance of Counsel on Direct Appeal incorporates all of the above facts and readily available citations. The Due Process Clause guarantees the right to effective assistance of counsel on first appeal. Evitts v. Lucey 469 US 387, 396 - 99 (1985); Strickland 466 US 668, 687 (1987) Petitioner has identified Counsel unprofessional acts or ommissions that are not the result of reasonable professional judgement. Counsel did not function under prevailing norms to make the adversarial testing process work in this particular case. Counsels decisions were outside the range of professional competent assistance. Counsel should have performed the minimal amount of legal research and reviewed the trial record and appealed the Superior Courts denial of his suppression motion to the Delaware Supreme Court accompanied with his knowledge and expertize in formulating legal arguments. Kimmelman Supra. (end of ground one)

TWO PAGE
DIAGRAM OF
SECTION OF ROUTE 13

EXHIBIT A



**Note:**
Attach **Top** of
this page to
bottom of page 1.

**Page 2**



page 15

## PETITIONER'S GROUND TWO - MIRANDA VIOLATION.

The argument the State Respondant's present in "their ground three", is essentially that the end result justifies the means. As explained above in ground one of this Traverse points and authorities which Petitioner is fully incorporating by reference, the 911 caller was an anonymous tipster. Giving an anonymous tipster a new name to that of an anonymous "concerned citizen" during the time period right before Petitioners seizure does not alter the legal landscape here.

The prejudice resulting from Petitioners answer is a "consent issue" under "coersive conditions. It is also an admission of guilt. And is also permitted evidence to be used against him obtained in violation of both his fourth and fifth amendment rights, being the shotgun, and his statement answer as well as his other admissions of guilt which would not have been made had police not violated his rights to begin with.

Petitioner asserts his Trial and Appellant Counsel were Ineffective in counsel's failure to perform adequate legal research on this Miranda issue in the pretrial, trial and post-trial stages.

Petitioner reasserts his position above in ground one. The Respondant's concede that Petitioner was indeed seized for Miranda to come into effect, police had drawn guns on the when police stood jumped out and told h,m to turn around Petitioner. Next, Respondant's assert that because Petitioner

page 16

did have a gun on him at the time, that's okay. So they attempt
to justify this after the fact by several tactics: (1) Look here
this man is guilty ~~as~~ he had a gun on him and admitted
he was involved in a conspiracy to rob the store.; (2) ~~that~~ that
the police were justified under the officers safety exception,
~~that the reasonable~~ Forget reasonable suspicion, he received 4th or 5th
party information from an anonymous concerned citizen and
that's all we need. (this call never stated "a gun", nor did it
state "one person", "no coveralls", nor a knit cap. A group of
people with stocking masks over faces) Nobody verified the
reliability or identity of this 911 call informant, and
(3) Well, that stuff might not fly, let's throw the Public Safety
exception in this mix. A little dab of guilty man (emotional)
value, a dose of, the police officers protect you too, so let's
throw them a bone on officer protection, and use the Public
Safety exception to frame this issue overall. We need to
nail this guy, he's guilty. Let's expand the power of the
State, I think that if a police officer only has a mere
hunch, pull the guns on a citizen, ~~and~~ if he's clean we'll
just let him go that all, no harm done, but we'll still be
able to get a few more criminals off the street this way.
   Enough, the people, the citizen's walking along the roads at
night who are not partaking in criminal activities, what about
them? In Jones 745 A2d at 856 ~~(2000)~~ (1999) n.78. The
Delaware Supreme Court addressed this exact issue and found
that the State incorrectly distinguished the officers safety

page 17

exception from the need for an articulable suspicion. Id.
(citing) Knowles v Iowa supra. The Respondant's place an
emphasis on the 911 call that police "had reason to believe
that Harris had a gun when they first approached him."
Answer at 9 (emphasis added).

Rather then rearguing this point again, see ground one's
extensive explanation and legal reasoning that asserts
how both factually flawed under § 2254(d)(2) thus
argument is, and legally flawed to the point of being
both contrary to law, and unreasonably determined.

The Public Safety exception is a "narrow" holding, created
in New York v Quarles 467 US 649 (1984) Cf. US v Massenburg
2002 WL 2005443 (3rd cir) **2. (distinguished in that the
shotgun was seized incident to a lawful arrest warrant
and arrest was either in a car or home) A gun in a car does
not fall under the public safety concerns expressed in Quarles.
U.S v DeSumma 272 F3d 176 (3rd cir 2001) (distinguished
in that defendant was already under arrest and his un-Mirandized
statements were suppressed. He was legally seized when state-
ments made, the distinguishing factor in still allowing the seized
gun in evidence, statement was a voluntary statement, and
DeSumma was not unlawfully seized) Dickerson v US,
530 US 428, 441 (2000) (distinguishing Oregon v Elstad
470 US 298, 306 (1985) refusing to apply the traditional
"fruits" doctrin developed in Fourth Amendment cases,
recognizing that unreasonable searches and seizures under

page 18

the Fourt Amendment are different then unwarned interrogations under the Fifth Amendment.)

Maryland v Pringle 124 SCT 795 (2003) brought about a change if it be, to the Miranda exclusion of evidence concering whether police officer had probable cause to believe that Pringle had committed a crime. Officer asked pringle if he could search his car, which was occupied by two other people and he found drugs. After miranda warnings Pringle stated the drugs were his and the others knew nothing about them. Pringle claimed he was arrested without probable cause, that officers observation of a large roll of money in glove box did not provide probable cause to search car, or that pringle had committed a crime. The Court held that "Any inference that everyone on the scene of a crime must disappear if Government informer singles out the guilty person." No one was singled out here and none of the three occupants provided information about ownership of the cocaine until after their arrest." Pringle supra. Delaware has rejected the federally recognized good-faith exception to search warrant requirements as well. Dorsey v State 761 A2d 807 (Del. 2000) (cited in) State v Devonshire 2004 WL 94724 (Del 2004) (officer mistaken about his authority to search) Cf. Jones Supra.

The Public Safety exception, the Respondants are "boot-strapping" to the Terry stop circumstances as an officer safety exception is explained in Jones at 856 n.78.

page 19

and the Respondants' reliance on actual "public safety"
is distingished in Quarles facts themselves.

First, the suspect had committed a crime, and the police
spoke face-to-face with the victim, a distingishing
feature in U.S. v Johnson 2004 WL 882151 (3rd cir
2004) Answer Exhibit D. (face-to-face tip from
informant had sufficient indicia of relibility to provide
officers with a reasonable suspicion justifying stop and frisk
of defendant.) There was no face-to-face tip in the
case at bar. Therefore, we can stop right here, and
rest on ground one's reasoning that there was no reasonable
suspicion to seize Petitioner.

However, if this Court refuses to uphold Petitioner's
ground one argument's we still have to deal with the
reasonable suspicion issue here as well. Respondant's want
this Court to rule that a sporting arm (shotgun) carried on a
person, completely concealed to anyone else, in the safety
of that person's clothing, exactly as a person carrying
a lawful concealed deadly weapon as under permit to
carry a gun, (mere possession of a gun is legal in Delaware)
is a threat to public safety if he is walking down the road.

In Johnson supra the Third Circuit's NOT PRECEDENTIAL
case, (See Roberson supra facts) relies on US v Valentine
232 F3d 350 (3rd cir 2000) which still involved a
face-to-face informant distigishing it from Florida v JL
supra. The distingishing "Public Safety" factor in

page 20

Johnson **3 n.1 the Court noted[], however that the road rage incident... "involved a threat to the public safety", (citing) U.S v Hensley 469 us 221 (1985) (distinguished by Florida v JL and Jones and Roberson cases, "Particularly in the context of felonies or crimes involving a threat to public safety it is in the public interest that the crime be solved and the suspect detained as promptly as possible)

Petitioner was not out waving his gun around and pointing it at members of the general public at large, as Johnson did at passing cars on a public highway. In Quarles the next distinguishing fact is that Quarles ran into a crowded Supermarket, and hid his gun in the supermarket where a child, shopper, or employee could find it and possibly shot shoot somebody. Maybe, if Petitioner had hidden the shotgun along the road in the bushes, the Quarll Quarles exception might fit that prong of factual circumstances. But, Petitioner did not create a Public Safety hazard in this case at bar.

The shotgun was "tucked safely away" from the public at large where nobody else could use it. The police did not have an reasonable articulate suspicion to seize him, or to believe Petitioner posed a threat to officers at that specific time before seizing Petitioner and questioning him as to whether he had a gun on him. (Please fully incorporate ground one, above, on this issue)

The particular distinction also present in this case is that

page 21

the States entire case revolves around this seizure of
Petitioner and the "fruits" of that seizure, being the gun,
possibly the hat he was wearing and his "in court confession"
all derived from this seizure and Miranda violations.

Under § 2254(d)(2) explained above in ground one section
only an unreasonable determination of facts can this
case be upheld on Quarles. It also seems there were more
than two officers with guns drawn pointing at Petitioner, no
testimony that Petitioner was acting suspicious or had his
hand in his coveralls grasping at anything. Petitioner was
not surrounded by other people, he was alone, and the
Petitioner is rather short and small built man less than
5 feet 5 inches and 135 lbs. had both hands visible
to officers all all times. Police did not even attempt to identify
Petitioner, his business abroad or destination to dispel any
"hunches" the officers may have had.

The officers, unlike the situation in Quarles were
NOT confronted with the immediate necessity of ascertaining
the whereabouts of a gun they had every reason to believe
the suspect had just removed from the empty holster
and discarded in the supermarket. In fact, in Petitioners
case we have: (1) an unreliable informant as compared to
Quarles victim eyewitness to a crime seeing the gun specifically.
(2) More the one suspect compared to Quarles one identified
suspect. (3) An appearance of a pipe, could have been a pool
stick. Pocket's Tavern has 7 pool tables (4) Group of people

page 22

headed in a general direction, caller basically "guessed" this
because the group of people could have went across Route 13
as well, or to the 24 hour Car-Wash, or to Pockets to
play pool, as compared to one lone man running directly
into a super market. (5) stocking masks over faces, no hight,
weight, body build, hair color, race, color, color of shirts
no color of pants, no color of stocking masks, no description
of shoes or boots, no description of walk or gait or or any
other distinguishing characteristics that would have permitted
these officers to stop and point their loaded pistols at
Petitioner based simply on the 911 call and pulling up to
him on the highway. (No ~~yellow~~ Black jacket with "Big Ben" on it)

    The fact is, these officers were just lucky that ~~day~~.
evening, It could have just as well been any hardworking
man from any of the Apt. complexes or housing developments
within walking distance of this area.

    If there were such exigent circumstances, why did not the
Respondants rely on ~~Money~~ Mincey v Arizona 437 US 385
394 (1978).

    In this case, unlike Quarles we do have an instance
where Petitioners claim is that he was compelled by police
conduct which over came his will to resist. Quarles at 654
(citing Beckwith v US 425 US 341, 347-348 (1978); Davis
v North Carolina 384 US 737, 738 (1966) when police pointed
loaded pistols in his face, large tall police officers with
police car lights shining in Petitioners eyes blinding him.

Page 23

Further more, "the Fifth Amendments structures, are not removed by showing reasonableness" in police actions. Fisher v US 425 US 391, 400 (1976). A comparable case that was not overruled or distinguished by Quarles is Rhode Island v Innis 446 US 291 (1980) (where the suspect had hidden a shotgun near a school, the suspect is still entitled to Miranda protection)

Without a reasonable finding of facts in Petitioners case how is this Court going to rule on issues of law? The lower courts unreasonable determination of facts under § 2254 (d)(2) leads to an unreasonable application of the clearly established law under Miranda in this case particular factual setting.

Therefore, all evidence taken as "fruit" of this involuntary statement in violation of Miranda should be suppressed. as evidence used to convict Petitioner of Attempted Robbery First Degree 11 Del C § 832 (a)(2), and, Possession of a Firearm During the Commission of a Felony. 11 Del C § 1448. Violative of the Fourth and Fifth Amendments in addition to Miranda, relying on involuntary "consent", and an involuntary "statement" answer, the distinction is that in this circumstances the "fruit" is to be excluded as "fruit of the ~~poisonoustree~~ poisonous tree".

These Two charges should be reversed.

page 24

PETITIONER'S GROUND THREE: Sufficiency of Evidence

The Petitioner bases his claim on the corpus delicti rule, State v Calvano 154 A 461 (Del 1936) that he did not commit a felony while he possessed a weapon (a weapon procured by use of unlawful seizure and involuntary confession) Jenkins v State 401 A2d 83 (Del 1979) And that in an attempted robbery case, the state did not establish evidence, independent of defendants confession, which tends to show that defendant attempted to take, exercise control over, or obtain property of another by use of threat of "immediate" force. De Jesus v State 655 A2d 1180, 1198, ~~1199~~ 1201, 1203 (Del 1995) (citing Opper v US 348 US 84, 93 (1954) Addressing the issue of corpus delicti as it relates to an attempted crime, citing Jenkins supra as a "consummated" offense.)

The Delaware Supreme Court despite the difficulties in a case of attempted robbery where the defendant is moving forward the commission of a crime in which a "substantial step" forward a robbery may be more demanding. The Court "believes the attempted robbery carries a distinct corpus delicti. In order to establish the corpus delicti for any crime, the prosecution must introduce independent evidence of the criminal conduct forming the gravamen of the offense. (cite omitted) The gravamen of a robbery or attempted robbery charge is a "taking" by "force". De Jesus at 1203-04: See State v Norris 73 A2d 780 (1950) (2 elements: taking property

page 25

(larceny) by violence or putting person in fear) The Court held,
"that in an attempted robbery case, the State must establish
evidence, aliunde the defendant's confession, which tends
to show that the defendant (1) attempted to take, exercise
control over or obtain the property of another (2) by the use
or threat of immediate force.

Here, "it must be shown that Petitioner used or threatened
force as a means to take the property of [a named victim.]
Although the taking and the application of force need not
be contemporaneous, there must be "a causual connection
between the use ~~of force~~ or threat of force and the
attempted theft. [cites omitted in De Jesus] It it is
shown that [Petitioner] brandished [Displayed] the [gun]
or otherwise threatened [unnamed victim] in order to
take or appropriate his property, the State has sustained
its burden of proving the corpus delicti of the crime.
Without such independent evidence that [Petitioner]
attempted to "take" or "appropriate" the property of
[unnamed victim], however, his conviction cannot
stand." De Jesus at 1204.

The State Respondents insist they have met this
threshold because police officers observed him walking
towards Pockets at the time of his arrest and Petitioner
was carrying a ~~shotgun~~ loaded shot gun, and Petitioner
admitted he had a shot gun on him. Disregarding the
renouciation defense, the State was still required

page 26

to show, the corpud corpus delicti elements one being
"a causual connection between the use of force and the
[attempted] theft " DeJusus supra. The "use of force"
according to statute 11 Del C§ 832 (a)(2) in a first
degree attempted robbery is that Petitioner "displayed"
what appeared to be a deadly weapon. There is no
evidence Petitioner "brandished" or "displayed" the
shotgun in order to "attempt theft." DeJesus at
1204. No evidence that Petitioner attempted to "take"
or "appropriate" the property of an unnamed victim.

  Because there was never a victim where Petitioner
had "displayed" the shot gun and "attempted" to
rob them. The fact that the Petitioner stated his intention
can not be used here because it is insufficient
under the corpus delicti rule. DeJusus at 1202 (citing)
Bright v State   490 A2d 564, 569 (1985) ( the
"independant evidence" rule of corpus detects. delicti)
It must be shown that Petitioner used or threatened
force as a means to take property from unnamed
victim. Under statute this means a "display"
of a firearm to an actual live victim/person.

  Petitioner is actually innocent of this charge
attempted First Degree Robbery 11 Del C§ 832 (a)(2)
because the "display" element has not be proven
beyond a reasonable doubt. Nor was the element
of "attempting" to take or appropreate anothers property.

page 27

Robbery requires the existence of a named human victim as a material element. 11 Del C § 832; Cotfield v State 784 A2d 588, 592 (Del 2002).

The Delaware Supreme Court adopted a "two-part" analysis to apply the "display" requirements in §832(a)(2). The State Did Not Present Sufficient Evidence To Find That Petitioner Displayed What Appeared To Be A Deadly Weapon.

"First," the victim "must subjectively believe that the defendant has a weapon. Second, the defendant's "threat" must be accompanied by an "objective" manifestation of a weapon". Walton v State 821 A2d 871 (Del 2003) (emphasis added) "The objective manifestation requirement attributes a broad meaning to the term "display" in order to punish the robber who gestures forward something that appears to be a concealed deadly weapon." Walton supra at 874; Word v State 801 A2d 927 (Del 2002) (displays)

In this inquiry we don't even get to the "display" element because we do not have a named victim according to statute. interpretation by Cotfield at 592, cited in Walton at 874. And we are missing the "attempted" theft from this victim. The fact is, Petitioner may have actually went ahead and entered the Liquor Store with the concealed Shotgun. Unless he "gestured" he had

page 28

a gun, any potential victim would not know he
had a gun, as long as it was kept hidden and the
Petitioner did not attempt to have a victim "take
notice" of it, if petitioner did "attempt" "to forcably"
take the property of another.

According to Walton, it could be possible for a
robber to simply show up at a place of business
with a weapon, but as long as he did not "brandish"
or "display" it, either physically or by use of gesture
or verbally stating so, the "display" element under
§ 832(a)(2) is not satisfied ~~and that individual
is actually innocent~~ due to insufficient evidence
under Jackson v. Virginia 443 US 307, 324 n.16
(1979) as a matter of state law. Petitioners carrying
a concealed shotgun where the police did not even
observe it, is not the conduct ~~of~~ that can be construed
~~under~~ as a "display" or an "appearance", of a
deadly weapon. Add that to the necessity that such
a "display" must be during an "attempted" "taking"
of property from a "named" human victim". ~~Petitioner~~
~~was sopra of 1980 ac.~~ These element have not
been proven beyond a reasonable doubt, seperately
11 Del C § 301(b). Petitioner has a right at trial to
be presumed innocent of conduct of "display" until
the State meets its burden of proof on this element.
beyond a reasonable doubt. Petitioner is not guilty
of a first degree attempted robbery.

Page 29

Possession Of A Firearm During The Commission Of A Felony: The state's evidence is insufficient to establish the elements of this charge beyond a reasonable doubt, in this "attempted" robbery.

There is a difference between a "consummated" First Degree Robbery and PDWDCF or PFDCF charges being separate and distinct offences. However in an "Attempted" First Degree Robbery citing the "display" section and P.F.D.C.F. under 11 Del C § 1448. Both statutes require the same proof. US v Redman 470 F.Supp 50, 56 (D.DEL 1979) (Attempted first degree robbery); Davis v State 400 A2d 292 (Del 1979) (attempted robbery first degree double jeopardy) These cases state that PFDCF is a duplicate charge in an "attempted" first degree robbery charge.

However, because the elements are not established by the State for a first degree robbery by Petitioner there is no felony.

Furthermore, the charge elements, one of which is that "a felony" is being committed, "during" the "commission". Petitioner did not use the gun "during" the "commission" of a felony, or "attempted" robbery because there is no "attempted" robbery element of "attempted taking" from a named victim. Walton supra, DeJusus supra.

While Petitioner may have had on his possession

page 30

a concealed deadly weapon, he is not charged
with that offense here. Neither does Petitioner
have to defend the elements of possession of a
Firearm By a Person Prohibited, because he is not
charged with that offense here.

The State did not meet their burden of proving
their case for attempted first degree robbery.
The State did not charge Petitioner with attempted
second degree robbery. Thats not available here.
The elements for "display" of § 832 (a)(2) are.


The Second Degree Conspiracy. Petitioner is not
adopting the Courts finding of guilt on this charge
so that is clear. However, Petitioner is not challenging
the elements of this offense as it only carried one
year and the time is served for this offense.



Respectfully submitted


Lynn Harris
Lynn Harris - Pro-se
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: 6/15/07

## **Certificate of Service**

I, _Lynn HARRIS_ , hereby certify that I have served a true

and correct cop(ies) of the attached: _"Petitioners Traverse To Answer",_

_and " Petitioners Points & Authorities..Traverse_ upon the following

parties/person (s):

TO: _James T. Wakley —DAG_     TO: _____

_Office of the Attorney General_     _____

_820 N. French Street_     _____

_Wilmington, DE 19801_     _____

_____     _____

TO: _____     TO: _____

_____     _____

_____     _____

_____     _____

_____     _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this _6_ day of _15_ _____, 2007

_Lynn Harris_
Lynn Harris  Pro-se
Del. Corr. Center
1181 Paddock Rd -
Smyrna, DE 19977

Mr. Lynn Harris
SBI# 2 9 2 4 4 L     UNIT 22
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

united states District court
wilmington Delaware
Lock Box 18 "844" king street
Clerk

19801

U.S.M.S
X-RAY


