THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

LYNN HARRIS ~
~
Petitioner ~
~
V. ~ CIV,ACT,NO, 06-786 * * *
~
~
Thomas Carroll, warden ~
Respondents ~
~

**PETITIONERS POINTS AND AUTHORITIES TO PETITIONERS TRAVERSE**

Point 1. **The state court's unreasonable Determination of Facts Necessary to the Disposition of Grounds one; two and three.**

The reasonableness of the state courts facts determination on the issue of whether police had reasonable articulate suspicion is frustrated in several respects. One is that the court relied on hindsight. The state court manipulated the facts discovered after petitioner's seizure to justify the officer's reasonable suspicion that criminal activity was present. Two is the court's manipulative use of "terminology" characterizing on anonymous tipster's identify into that of an anonymous concerned citizen. Three is the manipulative use of the terminology that the anonymous 911 caller used in their description, and the actual evidence seized in that the court replaces the 911 callers descriptions with those of the evidence recovered and described in court testimony,

The Factual layout of these types of cases always begins with the date and time of the 911 call. us v.Robertson 90 F.3d 75 3'd cir 1996; Florida v. JL 529 us 266 /2000) Jones v. State 745 A'2d 856 / Del. 1999) Caldwell v. State 770 A2d 522 Del. (2001): Accord: us v. Nash (2002 wL 31500920 D:Del; Riley v. state 892 A2d 370 (Del. 2006) citing woody v. state 765 And 1257 Del 2001: Purnel v. State, 832 A2d 714 Del.2003; Quarles v. State 696 A2d 1334 del 1997; Cummings v. State 765 a2d 945 (Del 2001), However in the instant case it is readily apparent that the Delaware state courts have accepted the petitioner's guilt over his constitutional rights, adhering the principal that the ends

Justify the means in this case where petitioner accepted full responsibility for his actions by explaining to the judge what happened, the planning, etc. It is disputed whether petitioner renounced his participation.

Using the formula the above courts have used to determine the state of Delaware Terry Hop codified in 11delC 1902. A state repeated right arbitrarily denied to petitioner Hick v. Florida 447 us 343 (1980). The factual layout consists of the following as in our third cir Roberson vs. supreme courts J.L and Delaware Supreme Court Jones cases. The questions presented in these cases all involved a concerned citizen's anonymous tipsters 911 call describing suspicious individuals, their clothing descriptions, their suspected activity and the their "cir" and state cases involved high crime cases.

In Robertson the third "cir" was asked to decide the questions whether an anonymous tip that contains only information readily observable at the time the tip is made may supply reasonable suspicion for a terry stop is absence of police observations of any suspicious conduct? Our third "cir" said no. The conduct that the police observed in Roberton and Jones and the other cases cited above, is more on the suspicious side than the conduct exhibited by the petitioner here at the time of his stop.

**The Fact on Record**

On the evening of May 7, 2003 a Delaware 911 operator dispatch received an anonymous call for a concerned citizen stating she was concerned about an unfamiliar car parked at the end of her driveway and "several" people got out of the car and pulled stocking masks over their faces, and one had put what papered to be a pipe in their pants and went toward Packers Tavern according to recon operator.

So far as the record reveals, at this specific point in time which is relevant to our inquiry, nothing is known about the information. More important, there is no description as to the number of these individuals, their height, weight, race, color or description of their clothing, shoes, build characteristics or anything else, except for the stocking masks and pants and they were headed in the directions of Route 13, (one wonders if this informant could have actually observed anyone walking outside at night pass the light from the lamp pose located near the end of this driveway).

At approximately 11:30 PM, the "in formers" tip was relayed over the police radio. Officer Slover responded to the call and pulled up to a lane single person walking on the pedestrian walk area of Route 13 within fifty feet of the intersection, governed by overhead turn signals that allows both cars and pedestrians to cross Route 13 exactly where a small road leads to the anonymous tip steps driveway he other directions leads to #1. a housing development; #2. Beaver Brooks Apartments; #3. Longollian Apartments (name has changed since 2003).

This stretch of Route 13 has a steady amount of foot traffic during the house that petitioner was a foot here. There are three public businesses open until one o'clock AM. There is a car wash, which is open 24 hours located directly across the highway from the liquor store. The liquor store, and across the parking lot a large Tavern that has seven of eight billiards tables, severs hot food until one o'clock AM, and of course alcohol beverages Many of the

3

patrians walking in from the two apartments complexes and housing complexes all within one quarter to one third of a mile, and significantly must cross Route 13 at the exact location where petitioner was stopped by police.

According to officer Slover's "testimony", petitioner did not attempt to flee, he was not lurking in the bushes and small trees that line this 200 feet of pedestrians walk way, which is about 12 feet in width. Petitioner was not wearing pants, and did not have a stocking over his face.

He was not being elusive, nor was he running. Officer Slover did not say he observed a pipe, or a firearm, nor did he state petitioner made any threading or other wise unusual movements. And neither was he accompanied by several other people. The police observed no indication of criminal activity.

At this point police got out of their marked patrol car ordered petitioner to turn around. As they approached him they did not observe anything other then a man wearing coveralls and a small knit cap, hath of which are common outer ware for a working man who may have been working outside in early May evening and had just gotten off a 3 -11 o'clock shift or even doing mechanic work on an automobile, lawn mower, "etc" in his garage or workshop. However, the police stopped petitioner, took control over his movement and asked him do you have any weapons on you? Petitioner was placed under arrest and subsequently indicated for possession of a firearm during the commission of a felony, attempted first degree robbery and second degree conspiracy. The state provided petitioner with one of its ineffective counsels, who failed to investigate both the law and facts in this case.

Nevertheless, counsel moved to suppress the evidence seized by the police, because of counsel's unfamiliarity of the area or location, counsel was unable to articulate some of the material facts above, his lack of investigation, a simple drive through investigation would have been sufficient. As a simple legal research on anonymous tips would have revealed the cases cited herein. And a simple review of
11 Del C 1902 would have accomplished the same task.

Counsel filed a suppression motion that was unsuccessful and refused to appeal it to the Delaware Supreme Court despite an accessible amount of case law supporting his client's case that the state had a much stronger case, but were reversed based on a lack of reasonable suspicion. Counsel is deficient and petitioner did not get a chance to get a full and fair opportunity to have the state courts review his claim here, Kimmelman v. Morrison 477us. The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.

Florida v. JL 529 us 266.271 (2000). The Delaware Supreme Court articulated a two prong` test in Quarles v. state 696 A 2d 1334.1338(Del 1997). The First Prong consists of an officer's objective observations in the totality of the circumstances of the pattern or practice of behavior of the lawbreaker, and the second prong is what inferences or deductions a trained officer could make which might elude an untrained person ID at 1330. Specifically, there is no good Faith exception that would allow a police officer lacking reasonable

suspicion to create that suspicion through an unjustified attempted detention. Jones v. State 745 A2d at 864. In Jones the court found that the superior court incorrectly distinguished the officer's safety exception from the need for an articulate suspicion Id at 856.78. Other wise nearly every invasion of a person's privacy could be justified by arguing the police needed to protect themselves from harm. Knowles v. Iowa 523 us 113,119 (1998).

There is no evidence officer Slover forced a hostile person, or that officer faced a large number of people either. The record reflects no circumstances here that would give officer justification for believing petitioner was armed and presently dangerous.

In fact, the officer observations added nothing to the anonymous tipsters and did not corroborate or particularize the tipster's statement except to find a single person, present and alone on a well traveled highway. The only thing the officer did was guest. First, he relied exclusively on the anonymous tipster's information. Second, he made a guess that by chance the man walking down this stretch of highway just might be one of the individuals from the car in the driveway. Officer certainly did not observe a pattern of criminal behavior. There was no testimony that this area was the focus of special attention because of prior criminal activity either. It's a well known fact, most liquor stores get robbed on occasion. There were no special police bulletin that police focus special attention on this area.

The location alone is insufficient suspicion that criminal activity is a foot. Particularly, on a busy highway surrounded by apartment complexes and housing development.

The fact that a person is walking through a poorly lit section of walkway certainly should not give rise to suspicious criminal activity, particularly where it is located between an intersection, that is well lit up and the Pockers Tavern and car wash parking lots, which are very well lit up as well. The fact is that this area my have only been poorly - lit due to the extreme brightness at each end of this walkway, or the possibility of a street light being out, although that may be irrelevant to the circumstances existing at this exact time. Location alone is insufficient suspicion.

Cummings v. State 765 A2d 945,949 Del /2001). Police had responded to area several times for burglar alarms held not suspicious area). It is well established law that a suspect's presence in a high-crime area late at night is alone insufficient to constitute reasonable articulate suspicion.

Jones at 871; Brown v. Texas 443 us 47,52 (1979). However a suspect presence in a high crime area plus his flight from police is one factor that may be considered in the totality of the circumstances in establishing reasonable. Suspicion. Jones Supra In the case here petitioner did not take flight. Petitioners was on public property open to the public that is noted for regular flow of foot traffic to and from the three businesses open at 11:30 pm that evening.

Officer Slover admits he immediately stopped and seized petitioner, where he was not free to leave, he relied exclusively on the radio dispatch from an anonymous 911 call. There was no time for an independent observation

from this officer other than the location and petitioners outerwear which did not specifically match the dispatch description. Riley v. State 892 A2d 370,375-78 (Del 2006); Florida v. JL Spra.; us v. Roberson Spra; Cadalwell Supra. Had petitioner counsel filed a direct appeal citing the facts from the record there is a reasonable probability the out come would have b been different, had counsel did any research on this issue. Had counselor ever performed a drive thru investigation of the area "see attached Exhibit A" an outline map of Route 13, pockets, the traffic signal light, and the location of the driveway, counsel could have had a better grasp of these facts. Had counsel performed an interview of the liquor store employees, Pockets employees and car wash manager, they would confirm the foot traffic from the apartments and housing complexes nearby. Had counsel eat in the liquor store parking lot for an hour or two at around 11 to 11:30 pm, he would have independent evidence that there are customers entering all three businesses that do wear coveralls and caps of all sorts in May, June and July. Had counsel actually walked the street of Route 13 in question, he would have discovered that the only reason this 200-300 foot section of walkway was poorly - lit is because at the traffic light and at the parking lot on either end is so powerfully lit up like a day at 12 noon that when one quickly passes each area, the otherwise lit area, just does not have the 6 or 20 kilogram lights that the traffic area and parking lot does.

The counsels failure to perform fact investigation on the elements at issue is defective perforce sufficient to undermine the confidence in the petitioners conviction for possession of a deadly weapon during the commission of a felony. Wigglins v. Smith 539 us 510, 2003 (counsels failure to develop mitigating facts) 123 ct 2527, 2538-39, Wood Ford v. Viscott 537 us 19, 22-23 (2002) (to prove prejudice, petitioner must establish a reasonable probability for counsels unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington 688us at 692. The Supreme Court rejected the preposition that the petitioners must prove the more difficult, more likely than not that the outcome would have been altered Strickland at 692 Wood Ford at 22-23.

The state courts misapplied the governing legal principle to asset of Facts different from those of the case in which the principle was announced, Wiggins 123 sct at 253-34 citing Williams v. Taylor 529 us 362 413 2002) (unreasonable application. 'See also: Lockver v. Andrade 532 us 63,123 sct 1166,1175 2003) (citing Williams at 407). State courts objective unreasonable in Fact Finding in finding reasonable articulate suspicion, where petitioner has showed by clear and convincing evidence in his trial record that the officer relied almost exclusively on an anonymous 911 tipster, and the state court apparently supports this in Harris v. State 871 A2d 1128 (table) 2005 WL 850 Del Supr at 2 part (9) states answer Exhibit A.

Had counsel performed adequate legal research and Marshaled the Facts developed at trail there is a reasonable probability the outcome on petitioners direct appeal would have been different, as to the finding of reasonable articulate suspicion, possessed by officer at the time before petitioner's initial seizure. Accord Taylor v. Maddox 366 F3 992 9th cir 2004)



explains AEDPA 2254 /d\ /2\ authorization of Federal court to grant habeas relief in cases where the state court decision was based on an un reasonable determination of the facts in light of the evidence presented in the state court proceedings) or to put it conversely, a Federal court may not second guess a state court's Fact Finding process unless, after review of the state court record, if determines that the state court was not merit wrong, but actually unreasonable CF Lockyer v. Androd 538 us 63,75 '2003). Second 225 \d`/1/ determination of a factual issue made by a state court shall be presumed to be correct unless the presumption of correctness may be rebutted only clear and convincing evidence. This 2254 \d/ /2/. The Federal courts review standard under 2254 /d/2. This Federal court review standard under 225 4 \d/ \2/ is whether the Findings of reasonable articulate suspicion was based on an unreasonable determination of the Facts in light of the evidence presented in the state court proceeding. Deference does not be definition preclude relief. A Federal court can disagree with a state courts credibility determination anonymous 911 call and when guided by AEDPA, conclude the decision was unreasonable. Taylor v. Maddox at Supra \citing/ Miller EL v. Cockrell 537 us 322, 340 2003. Indeed. The US Supreme Court and cir court have all found the standard net; See at 2538-39 citing cases.

As noted, intrinsic challenges to state court Findings come in several flavors under the unreasonable determination standard 2254 \d/ \2/ Each presenting its own set of considerations. No doubt the simplest is the situation where the state court should have made a Finding of Fact but neglected to do so anonymous concerned citizen

In that situation, the state courts factual determination is perfectly unreasonable and there is nothing to which the presumption of correctness can attach Wiggins at 2539-40. Or much like the case at bar, a same what different set of consideration applies where the state court does make Factual Finding, but does so under a misapprehension as to the legal standard. Taylor v. Maddox Supra / cites omitted).

Obviously, where the state courts legal error infects the Fact-Finding process (particular in a bench trail) the resulting Factual determination will be unreasonable and no presumption of correctness can attach to it. Taylor v. Moddox similarly, where the state courts plainly misapprehend the record in making their finding, and the misapprehension goes to a material factual issue that is central to petitioners claim, that misapprehension can fatally undermine the Fact Finding process, rendering the resulting Finding unreasonable. See Wingqins at 2532-39.

And as the Supreme Court in Miller-EL noted, the state court Fact Finding process is under mined where the state court has before it, yet apparently ignores, evidence that supports petitioners claim. Miller- EL 537 US at 346. While the state courts are not required to address every sit and title of proof suggested to them, nor need they make detailed Findings addressing all of the evidence before them Id, at 347 to Fatally undermine the state Fact-Finding process, and render the resulting Finding unreasonable, they over looked or ignored evidence must be highly probative and control to petitioners

claim. In other words, the evidence in question must be sufficient to support petitioners when considered on the context of the full record bearing on the issue presented in the habeas petition. Taylor v. Maddox Supr. But failure to consider key aspects of the record is a defective Fact Finding process. Miller-El at 346 petitions claim above meets all the criteria cited above. Please review and fully incorporate petitioners complete trial record transcripts as part of this claim.

Ineffective Assistance of counsel on direct appeal in corporate all of the above facts and readily available citations. The due process clues guarantees that right to affection assistance of counsel on first appeal. Evitts v. Lucey 469 us, 387,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; Strickland 466 US 668, 687 (1987) petitioner has identified counsel unprofessional acts that are not the result of reasonable professional judgment.

Counsel did not function under prevailing norms to make the adversarial testing process work to this particular case. Counsel's decisions were outside the range of professional competent assistance. "Counsel should have reviewed the trial record and appealed the superior courts denial of his suppression motion to the Delaware Supreme Court accompanied with his knowledge and expertise in formulating legal argument Kimmelinan Supr.

(End of ground one)

**Petitioner's Ground Two- Miranda Violation**

The argument the state respondent's present in their ground there, is essentially that the end result justified the means. As explained above in ground one of this Traverse Points and authorities which petitioner is fully in corpora ting by reference; the 911 caller was an anonymous tipster. Giving an anonymous tipster a new name t that of an anonymous concerned citizen during the time period right before petitioner's seizure does not alter the legal land scope here.

The prejudice resulting from petitioner answer is a consent issue under coercive conditions. If is also an admission of gult. And is also permitted evidence to be used against him obtained in violation of both his fourth and fifth amendment rights, being the shotgun, and his statement answer as well as his other admissions of guilt, which world not have been made had police not violated his right to begin with.

Petitioner asserts his trial and appellant counsel were ineffective in counsel's failure to perform adequate legal research on this Miranda issue in the pretrial, trial and post-trail stages.

Petitioner reasserts his position above in ground one. The respondent's concede that petitioner was indeed seized for Miranda to come into effect; when police stopped jumped out and told him to turn around "petitioner".

Next, respondent assert that because petitioner did have a gun on him at the time, that's okay. So they attempted to justify this after the fact by several tactics: #1. Look here this man is guilty he had a gun on him and admitted he was involved in a conspiracy to rob the store; #2. that the police were justified under the officer's safety reception, forget reasonable suspicion, he received 4th and 5th party information from an anonymous concerned citizen and that's all we need, this case never stated a gun, nor did it state one person, no coveralls, not a knit <u>cap</u>. A group of people waring stocking masks over faces. Nobody verified the reliability or identify of this 911 call information, and #3. Well, that stuff might not fly; let's throw the public safety exception in this mix.

A little dab of guilty man (emotional value), a dose of, the police officers protect you too, so let's throw them a bone on officer protection, and use the public safety exception to frame this issue overall. We need to nail this guy, he's guilty. Let's expand the power of the state;

I think that if a police officer has a mere hunch, pull the guns on a citizen, if he's clean we'll just let him go that's all, no harm done, but we'll still be able to get a few more criminals off the street this way. Enough, the people, the

citizens walking along the roads at night who are not partaking in criminal activities, what about them?

In Jones 745 A2d at 856 1999, the Delaware Supreme Court addressed this exact issue and found that the state incorrectly distinguished the officers safety exception from the need for an particularly suspicion Id citing Knowles v. Iowa Supra. The respondent's place an emphasis on the 911 call that police had reason to believe that Harris had a gun when they first approached him, Answer at 911 emphases added. Rather the rearguing this point again, see ground one's extensive explanations and legal reasoning that asserts how both factually flawed under 2254'd' '2'. This argument is, and legally flawed to the point of being both contrary to law, and unreasonably determined.

The public safety exception is a narrow holding, created in New York v.Quarles 467 us 644 (1984) CF US v. Massenburg 2002 WL 2005 443 (3rd cir) distinguished in that the shotgun was seized incident to a lawful arrest warrant and arrest was either in a car or home. A gun in a car does not fall under the public safety concern expressed in Quarles, US v. Desumma 272 F3d 176 (3rd cir 2001) distinguished in that defendant was already under arrest and his un-mirandized statements were suppressed. He was legally seized when statements made, the distinguishing factor in still allowing the seized gun in evidence, statement was a voluntary statement and Desumma was not unlawfully seized. Dickerson v. US 530 US 428,441,306 (1985) refusing to apply the traditional fruits doctrine developed in Fourth Amendment cases recognizing the unreasonable searches and seizures under the Fourth Amendment one different then unwarned interrogations under the Fifth Amendment.

Maryland v. Pringle 124 sct 795 (2003) brought about a change if it be, to the Miranda exclusion of evidence concerning whether police officer had probable cause to believe that Pringles had committed a crime. Office asked Pringles if he could search his car, which was occupied by two other people and he found drugs. After Miranda warning Pringles stated the drugs were his and the others knew nothing about them. Pringle claimed he was arrested without probable cause, that officers observation of a large roll of money in glove box did not provided probable cause to search car, or that Pringles had committed a crime. The court held that any inference that every one on the seen at the crime must disappear if government informer singles out the guilty person. No one was singled out here and none of the three occupants proved information about ownership of the cocaine until after their arrest, Pringle Supra, Delaware has rejected the Federally recognized good-faith exception to search warrant requirements as well, Darsey v. State 761 A2d 807 Del 2000 cited in State v. Devanshire 2004 WL 94724 Del 2004 officer mistaken about his authority to search of Jones Supra.

The public safety exception, the respondents are boot-strapping to the

terry stop circumstances as an officer safety exception is explained in Jones at 856 N 78 and the respondents reliance on actual public safety is distinguished in Quarles Facts themselves.

First, the suspect had committed a crime, and the police spoke face-to-face with the victim, a distinguishing features in US v. Johnson 2004 WL 882151 3rd cir 2004. Answer exhibit a face-to-face tip from informant had sufficient indicia of reliability to provide officers with a reasonable suspicion justifying stop and frisk of defendant. There was no face-to-face tip in the case at bar. Therefore, we can stop right here, and rest on ground one's reasoning that there was no reasonable suspicion to seize petitioner.

However, if this court refuses to uphold petitioners ground one argument's we still have to deal with the reasonable suspicion issue here as well. Respondent's want this court to rule that a sporting arm (shotgun) carried on a person, completely concealed to anyone else, in the safety of that person's clothing, exactly as a person caring a lawful concealed deadly weapon as under permit to carry a gun, mere possession of a gun is legal in Delaware is a threat to public safety if he is walking down the road. In Johnson Supra the third cir Not Residential case. see Roberson Supra Facts relies on US v. Valentine 232 F3d 350 (3'd cir 2000) which still involved a face to-face informant distinguishing it from Florida v. JL Supra. The distinguishing public safety factor in Johnson **3n.1 the court noted, however that the road rage incident. . . .involved a threat to the public safety, citing US v. Hensley 469 US,221 (1985) distinguished by Florida v.JL and Jones and Roberson cases particularly in the context of Felonies or crimes involving a threat to public safety it is in the public interest that the crime be solved and the suspect detained as promptly as possible.

Petitioner was not out waving his gun around and pointing it at members of general public at large, as Johnson did at pushing cars on a public highway.

In Quarles the next distinguishing Fact is that Quarles ran into a crowded supermarket and hid his gun in the supermarket where a child, shopper, or employee could find it and possibly shoot somebody, maybe, if petitioner had hidden the shotgun along the road in the bushes, the Quarles exception might fit that prong of factual circumstances. But petitioner did not create a public safety hazard in this case at bar. The shotgun was tucked safely away from the public at large where nobody else could use it. The police did not have an reasonable articulate suspicion to seize him, or believe petitioner posed a threat to officers at that specific time before seizing petitioner and questioning him as to whether he had a gun or him. \Please Fully/ in corporate ground one, above, on this issue. The particular distinction also present on this case is that the state entire case revolves around this seizure of petitioner and the fruits of that seizure, being the gun, possible the hat he was wearing and his in court confession all derived from the seizure and Miranda violations.

Under 2254`d1/2` explained above in ground one section only on unreasonable determination of Facts can this case be upheld on Quarles.

No testimony that petitioner was acting suspicious or had his hand in his coverall grasping at anything. Petitioner was not surrounded by other people, he was alone, and the petitioner is rather short and small built man less that 5 feet 7 inches and 170 lbs. had both hands visible to officers at all times. Police did not even attempt to identify petitioner, his business abroad or destination to dispel any hunches the officers may have had. The officers, unlike the situation in Quarles was not confronted with the immediate necessity of ascertaining the whereabouts of a gun they had every reason to believe the suspect had just removed from the empty hoister and discarded in the supermarket.

In fact, in petitioner's case we have #1. an unreliable informant as compared to Quarles victim eyewitness to a crime seeing the gun specifically. #2. more than one suspect compared to Quarlers one identified suspect #3. an appearance of a pipe could have been a pool stick. #4. Pockets Tavern has 7 pool tables 4 groups of people headed in a general direction. Caller basically guessed this because the group of people could have went across Route 13 as well, or to the 24 hour car wash, or to Pockets to play pool, as compared to one lane man running directly into a supermarket, #5. stocking masks over faces, no height, weight, bobby build, hair color, race, color of shirt, no color of pants, no color of stocking mask, no description of shoes or boots, no description of walk or any other distinguishing characteristics that would have permitted these officers to stop and point their loaded pistols at petitioner based simply on the 91 call pulling up to him on the highway. The fact is, these officers were just lucky that evening. It could have just as well been any hard working man from any of the apartment complexes or housing developments within walking distance of this area.

If there were such exigent circumstances, why did not the respondent rely on Mincey v. Arizona 437 US.385 394 (1978).

In this case, unlike Quarles we do have an instance where petitioners claim is that he was compelled by police conduct which over come his will to resist. Quarles at 654 citing Beckweth v. US 425 us 341,347-348 (1078); Davis v. North Carolina 384, us 737,738 (1966).

Further more, the Fifth Amendments structures are not removed by showing reasonableness in police actions. Fisher v. US 425 US 291, 400 (1976). A comparable case that was not overruled or distinguished by Quarles is Rhode v. Innis 446 us 291 (1980) where the suspect had hidden a shotgun near a school, the suspect is still entitled to Miranda protection, without a reasonable Finding of Facts in petitioner case, how is this court going to rule on issues of law?

The lower court unreasonable determination of Facts under 2254 'd' '2' leads to an unreasonable application of the clearly established law under Miranda in this case particular Factual setting. There, all evidence taken as fruit of this involuntary statement in violation of marina should be suppressed as evidence used to convict petitioner of attempted robbery first degree 11 Del '6832 'A' '2', and possession of a firearm during the commission of a felony 11 Del c 1448. Addition to Miranda, relying on involuntary consent and on involuntary statement answer, the distinction is that in their circumstances the Fruit is to be excluded as Fruit of the poisonous tree.

These two charges should be reversed.

**Petitioners Ground three Sufficiency of Evidence**

The petitioner bases his claim on the corpus delicti rule, State v. Calvana 154 A 461 Del (1936) that he did not commit a felony while he possessed a weapon procured by use of unlawful seizure and involuntary confession. Jenkins v. state 401 A2d 83 Del (1979). And that in an attempted robbery case, the state did not establish evidence, independent of defendant confession which tends to show that defendant attempted to take exercise control over or obtain property of another by use of threat of immediate Force. DeJesus v. State 655 A2d 1180,1198, 1201 1203 Del (1005) citing Opper v. US 348 us 84,93 1954. Addressing the issue of Corpus Delicti as it relates to an attempted crime, citing Jenkins Supra as a consummated offense.

The Delaware Supreme court despite the difficulties in a case of attempted robbery where the defendant is moving toward the commission of a crime in which a substantial step toward a robbery may be more demanding.

The court believes the attempted robbery carries a distinct corpus delicti. In order to establish the corpus delecti for any crime, the prosecution must introduce independent evidence of the criminal conduct forming the gravaman of the offense (cite omitted).

The graveman of a robbery or attempted robbery charge is a taking by force. Dejesus at 1203 -04 see State v. Morris 73 A2d 790 (1950) 2 elements: taking property, larceny by violence or putting person in fear.

The court held, that in an attempted robbery case, the state must establish evidence, beside the defendants confession, which tends to show that the defendant #1. Attempted to take exercise control over or obtain the property of another. #2. by the use of threat or immediate force. Here it must be shown that petitioner used a threatened force as a means to take the property of an unnamed victim. Although the taking and the application of force need not be contemporaneous, there must be a causal connection between the use of threat or force and the attempted theft. (cites omitted in Dejesus).

If it is shown that (petitioner) brandished (displayed) the gun or other wise threaded unnamed victim, order to take or appropriate his property. The state has sustained its burden of proving the corpus delicti of the crime. Without such independent evidence that petitioner attempted to take or appropriate the property of unnamed victim, however, his conviction cannot stand Dejesus at 1204. The state respondents insist they have met this threshold because police officers observed him walking toward Pockets at the time of his arrest and petitioner was carrying a loaded shot gun, and petitioner admitted he had a shot gun on him. Disregarding the renunciation defense, the state was still required to show the corpus delicti elements one being a causal connection between the use of force and the attempted theft, Dejesus Supra. The use of force according to statute 11 Del`C832 'A' '2' in a first degree attempted robbery is that petitioner displayed what appeared to be a deadly weapon. There is no evidence petitioner brandished or displayed the shotgun in order to attempt theft. DeJesus at 1204, No evidence that petiole attempted to take or appropriate the property of an unnamed victim.

Because there was never a victim and no attempt to rob an unnamed victim, the Fact that the petitioner stated his intention cannot be used here because it is insufficient under the corpus delicti rule. DeJesus at 1202 citing Bright v. State 490 A2d 564,569 (1085) the independent evidence rule of corpus delecti. It must be shown that petitioner used or threatened Force as a means to take property from unnamed victim. Under statute this means a display of a firearm to an actual live victim person, petitioner is actually innocent of this charge attempted First Degree Robbery 11 Del`C 832 `A"2` because the display element has not been proven beyond a reasonable doubt, nor was the element of attempting to take or appropriate another's property.

Robbery requires the existence of a named human victim as a material element. 11 Del`C .832 Coffield v. State 794 A2d 588 592 Del (2002). The Delaware Supreme court adopted a two-part analysis to apply the display requirements in 832 'A' '2'. The state did not present sufficient evidence to find that petitioner displayed what appeared to be a deadly weapon.

First, the victim must subjectively believe that the defendant has a weapon. Second, the defendant's threat must be accompanied by an objective manifestation of a weapon. Watton v. State 821 A2d 871 (Del 2003) (emphases added). The objective manifestation requirement attributes abroad, meaning to the term displayed in order to punish the robber who gestures toward something that papers to be a concealed deadly weapon. Walton at 874; Word v. Sate 8901 A2d Del. (2002) (displays). In this require we don't even get to the display element because we do not have a named victim according to statute interpretation by Coffield at 592, cited in walton at 874. And we are missing the attempted thief from this victim.

The fact is petitioner may have actually went ahead and entered the liquor store with concealed shotgun, unless he gestured he had a gun, any potential victim would not know he had a gun, as long as it was kept hidden and the petitioner did not attempt to have a victim take notice of it, if petitioner did attempt to Forcibly take the property of another.

According to Walton, it could be possible for a robber to simply show up at a place of business with a weapon, but as long as he did not brandish or display it, either physically or by use of gesture or verbally starting so, the display element under 832 'A'2 is not satisfied due to insufficient evidence under Jackson v. Virginia carrying a concealed shotgun where the police did not even observe it, is not the conduct that can be contrived as a display or an appearance of a deadly weapon. Add that to the necessity that such a display must be during an attempted taking of property from a named human victim. These elements have not been proven beyond a reasonable doubt, separately. 11.Del 'C 301'b'. Petitioner has a right at trial to be presumed innocent of conduct of display until the state meets its burden of proof on this element, beyond a reasonable doubt. Petitioner is not guilty of a first degree attempted robbery, possession of a firearm during the commission of a felony. The state's evidence is insufficient to establish the elements of this charge beyond a reasonable doubt in this attempted robbery.

There is a difference b eaten a consummated first degree robbery and PDWDCF or PFDCF charges being separate and distinct offences. However, in an attempted first degree robbery citing the display section and PFDCR under 11 Del 'C' 1447. Both statutes require the same proof, US v Redmon 470 F Supp 50,56 Del (979). Attempted first degree robbery); Davis v. State 400 A2d 292 Del (1974) (attempted robbery first degree double jeopardy).

These cases state that PFDCF is a duplicate charge in an attempted first degree robbery charge. However, because the elements are not established by the state for a first degree robbery by petitioner there is no felony.

Furthermore, the charge elements, one of which is that a felony is being committed, during the commission of a felony, or attempted robbery because there is no attempted robbery element of attempted taking from a named victim. Walton Supra DeJesus Supra. Petitioner does not have to defend the elements of possession of a firearm by a person prohibited because he is not charged with that offense here.

The state did not meet this burden of proving their case for attempted first degree robbery. The state did not charge petitioner with attempted second degree robbery. That's not available here. The elements for display 832 'A' '2'.

The second degree conspiracy. I Petitioner is not adopting the courts finding of guilt on this charge so that is clear. However, petitioner is not

challenging the elements of this offense as it only carried one year and the time is served for this offense.

Respectfully Submitted

Dated: 8/23/07

Lynn Harris Pro-se
Delaware Correctional Center

1181 Paddock Road
Smyrna, Del 19977

# Certificate of Service

I, Lynn HARRIS, hereby certify that I have served a true and correct cop(ies) of the attached: "Petitioners Traverse To Answer," and "Petitioner's Points & Authorities... Traverse upon the following parties/person (s):

TO: James T. Wakley - DAG
Office of the Attorney General
820 N. French Street
Wilmington, DE 19801

TO:

TO:

TO:

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this ________ day of ________________________, 2007

Lynn Harris

Lynn Harris Pro-se
Del. Corr. Center
1181 Paddock Rd -
Smyrna, DE 19977