IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LYNN HARRIS,<br><br>            Petitioner,<br><br>       v.<br><br>PERRY PHELPS,<br>Warden, and JOSEPH R.<br>BIDEN, III, Attorney General<br>of the State of Delaware,<br><br>            Respondents.[1] | )<br>)<br>)<br>)<br>) Civ. No. 06-786-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Lynn Harris.  Pro se petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION[2]**

May  8 , 2008
Wilmington, Delaware

---

[1]Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. Warden Perry Phelps assumed office in January, 2008, replacing former Warden Thomas Carroll. See Fed. R. Civ. P. 25(d)(1).

[2]This case was re-assigned to the undersigned from the Vacant Judgeship on February 1, 2008.

**ROBINSON,** District Judge

## I. INTRODUCTION

Currently before the court is petitioner Lynn Harris' ("petitioner") application for a

writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (D.I. 1) Petitioner is

incarcerated at the Delaware Correctional Center in Smyrna, Delaware. For the

reasons that follow, the court will dismiss petitioner's § 2254 application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As summarized by the Delaware Supreme Court in petitioner's direct appeal:

On May 7, 2003 [petitioner] and three co-defendants, Marques Comer, Paul Nocho, and Dekelvin Townsend, met at Comer's apartment and formulated a plan to rob Pocket's Liquor Store in New Castle. The four men took a shotgun and four knit caps and drove to the liquor store in Comer's mother's car. They parked the car in a private, secluded driveway near the liquor store. Nocho testified at trial that he walked into the store and made a purchase. When he returned, he told Harris there were two clerks in the store. Harris proceeded toward the store with the shotgun hidden in his overalls and the knit cap on his head. Nocho returned to the car to wait as the get-away driver. Nocho testified that Townsend's role was to act as the look-out. Comer's job was to collect the money while Harris wielded the shotgun.

Unbeknownst to the four men, a concerned citizen telephoned police about the unfamiliar vehicle parked in her driveway. The caller identified four men exiting the vehicle pulling stocking caps over their faces and noted that one of the men appeared to be carrying a long pipe. The caller stated that the men were walking in the direction of the liquor store. Several police vehicles arrived on the scene within minutes. As police arrived, they saw [petitioner] walking along Route 13 in the direction of the liquor store. With guns drawn, police officers stopped [petitioner] and asked him if he had any weapons, to which [petitioner] responded "yes." The officers patted him down and discovered the shotgun.

[Petitioner] testified at his bench trial.[3]  He admitted to the judge that he had conspired with the others to rob the liquor store. He admitted that he assigned each coconspirator a specific role in the robbery plan. He admitted to driving with the others to the area near the liquor store in furtherance of the conspiracy. He also admitted to carrying the shotgun.

_____

[3]The other three co-defendants entered plea agreements with the State.

Harris v. State, 871 A.2d 1128 (Table), 2005 WL 850421 (Del. Apr. 11, 2005). In February 2004, the Superior Court convicted petitioner of attempted first degree robbery, second degree conspiracy, and possession of a firearm during the commission of a felony, and sentenced him to 13 years imprisonment, suspended after 10 years for a period of probation to follow. The Delaware Supreme Court affirmed petitioner's conviction and sentence. Harris, 2005 WL 850421, at *3.

In March 2006, petitioner filed a pro se motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting four claims: (1) the State failed to prove its case beyond a reasonable doubt; (2) the police did not have a reasonable and articulable suspicion to conduct an investigatory stop; (3) the police officer failed to Mirandize petitioner, thereby violating his Fifth Amendment rights; and (4) counsel provided ineffective assistance by failing to file a timely appeal. Harris v. State, 2006 WL 1679455 (Del. 2006). The Superior Court denied the motion because the claims were merely conclusory and not supported by evidence. Id. The Delaware Supreme Court affirmed the Superior Court's decision. See Harris v. State, 2006 WL 2714447, at *1 (Del. 2006).

Petitioner timely filed a § 2254 application. (D.I. 1) The State filed an answer, and petitioner filed two traverses in response. (D.I. 13; D.I. 19; D.I. 26)

## III. Standard of Review

If the highest state court has adjudicated the merits of a federal habeas claim, then a federal court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable

2

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 545 U.S. 374 (2005).

On federal habeas review, a district court must presume that a state court's implicit and explicit determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). This presumption is only rebutted by clear and convincing evidence to the contrary. Id.; Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner asserts four grounds for relief in his habeas application: (1) there was insufficient evidence to convict him of attempted robbery and the weapons offense; (2) the police lacked a reasonable articulable suspicion to stop him; (3) the police violated his rights under the Fifth Amendment by not administering a Miranda warning before asking him if he was carrying a weapon; and (4) defense counsel failed to file a timely

notice of appeal. (D.I. 1, at B5.) The court will address each claim in seriatim.

## A. Claim One: Insufficient evidence

### 1. Section 2254(d)(1): Petitioner's contention that there was insufficient evidence to support his conviction for attempted first degree robbery due to his renunciation of the robbery plan

Petitioner argues that there was insufficient evidence to support his conviction for

attempted first degree robbery because he had renounced the robbery plan before the

police stopped and arrested him. In essence, petitioner is arguing that there was

insufficient evidence to support the Superior Court's rejection of his affirmative defense

of renunciation.[4] The record reveals that petitioner presented this claim to the

Delaware Supreme Court during his direct appeal, and the Delaware Supreme Court

denied it as meritless. Therefore, the court will review petitioner's insufficient

_____

[4]Given this interpretation, the court questions whether the claim is cognizable on federal habeas review. For example, the due process guarantee of sufficiency of the evidence only applies to the facts necessary to establish the elements of the criminal offense as defined by state law; proof of the nonexistence of affirmative defenses is not constitutionally required. See Jackson v. Virginia, 443 U.S. 307, 324 n. 16 (1979); Patterson v. New York, 432 U.S. 197, 210 (1977). In Delaware, renunciation constitutes an affirmative defense to an "attempt" crime which will only succeed if the defendant proves his renunciation by a preponderance of the evidence. Del. Code Ann. tit. 11, § 304(a). Stated another way, the absence of renunciation is not an element of attempted first degree robbery. See State v. Baker, 720 A.2d 1139, 1150 (Del. 1998)("an affirmative defense, in effect, admits that the defendant did the criminal act, but seeks to excuse or mitigate the conduct."); C.f., Engle v. Isaac, 456 U.S. 107,119-21 n.20 (1982)(holding that, even when a State requires the prosecution to disprove an affirmative defense, the absence of that affirmative defense is not necessarily an element of the crime.). Federal courts in other circuits presented with a claim asserting insufficient evidence to support a court's rejection of an affirmative defense have held that the claim is not cognizable on habeas review. See Caldwell v. Russo, 181 F.3d 731, 740 (6th Cir. 1999), abrogated on other grounds by Mackey v. Dutton, 217 F.3d 339 (6th Cir. 2000); Crawford v. Straub, 2001 WL 85871, at *6-*7 (E.D. Mich. Jan. 11, 2001). Nevertheless, in an abundance of caution, the court will presume that petitioner's insufficient evidence claim regarding the Superior Court's rejection of his renunciation defense constitutes a claim cognizable in this proceeding.

4

evidence/renunciation claim under § 2254(d)(1) and (2).[5]

The clearly established Federal law applicable to insufficient evidence claims is the rule articulated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979). Pursuant to Jackson, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. Further, "a federal habeas court faced with a record of historical facts that supports conflicting interests must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

In Delaware, a person is guilty of first degree robbery when, in the course of committing theft, he uses or threatens to use immediate force against another with intent to compel that person to surrender or deliver up property, and displays what appears to be a deadly weapon or represents by word or conduct that he is in possession or control of a deadly weapon. 11 Del. C. Ann.§ 832(a)(1),(2); 11 Del. C. Ann. § 831(a). A person is guilty of an attempt to commit a crime if the person

_____

[5]Even though the Delaware Supreme Court did not cite Supreme Court precedent in denying petitioner's insufficient evidence claim as meritless, the court must still review the claim under the deferential standard provided by § 2254(d). See Early v. Packer, 537 U.S. 3, 8 (2002). Moreover, because the determination of renunciation is a factual question reserved for the finder of fact and dependent upon the defendant satisfying the "preponderance of the evidence standard," the court concludes that petitioner's claim regarding the sufficiency of the evidence with respect to his renunciation defense should also be reviewed under § 2254(d)(2).

5

[i]ntentionally does or omits to do anything which, under the circumstances as the person believes them to be, is a substantial step in the course of conduct planned to culminate in the commission of the crime by the person.

11 Del. C. Ann. § 531(2). Therefore, in order for petitioner to be convicted of attempted first degree robbery, the State had to prove that petitioner intentionally did something which, under the circumstances, was a substantial step in the course of committing a robbery of the liquor store.

During petitioner's bench trial, the State argued, and the defense conceded, that petitioner intentionally took a substantial step toward robbing the liquor store. For example, petitioner testified that he and his three co-defendants planned to rob the liquor store robbery while they were at a co-defendant's house, and that all four individuals then drove to the vicinity of the liquor store. Upon exiting the car, petitioner placed a hat on his head with holes cut out for his eyes, he placed a loaded shotgun in his overalls, and he proceeded to walk in the direction of the liquor store. Moreover, as previously agreed upon by the four co-defendants, Nocho cased the liquor store and reported his findings to petitioner.

However, the defense asserted that petitioner should not be found guilty of attempted first degree robbery because petitioner had renounced the plan to rob the liquor store before the police stopped and arrested him. To establish this affirmative defense, petitioner testified that he decided to forego the robbery once Nocho informed him that there were two individuals in the store, primarily because he realized the gravity of the situation and the danger involved. Although petitioner admitted that he did not tell Nocho about his decision to abandon the robbery plan, petitioner alleged that he told the other two co-defendants to forget the robbery, and that he was on his

6

way back to the car to tell Nocho to abandon the robbery when the police stopped him.

Nocho was the only co-defendant to testify during petitioner's trial. Nocho explained how he cased the liquor store, spoke to petitioner about his findings, and walked back to the getaway car. Nocho also described how he was sitting in the car for about five minutes before he saw the police stop petitioner at a location that was farther away from the liquor store than the location where Nocho spoke to petitioner. Defense counsel asked, "so [petitioner] would have had to have been walking away from the store to get to that location," and Nocho responded, "Right." Id. at A-38.

In contrast, the State presented the testimony of the arresting officer, who stated that petitioner was actually walking toward the liquor store, and away from the car, when the officers stopped petitioner. The officer also testified that the police car lights were on when the car was approaching him. Id. at A-20.

Pursuant to Delaware law, renunciation constitutes an affirmative defense for an attempt to commit a crime if,

> under the circumstances manifesting a voluntary and complete renunciation of the criminal purpose, the accused avoided the commission of the crime attempted by abandoning the criminal effort and, if mere abandonment was insufficient to accomplish avoidance, by taking further and affirmative steps which prevented the commission of the crime attempted.

11 Del. C. Ann. § 541(b). However, a

> renunciation is not "voluntary and complete" . . . if it is motivated in whole or in part by a belief that circumstances exist which increase the probability of detection or apprehension of the accused or another participant in the criminal enterprise. . . .

11 Del. C. Ann. § 541(b). During the closing arguments, the State and defense counsel thoroughly explained their positions regarding the applicability of the affirmative defense

7

of renunciation in petitioner's case. The Superior Court judge considered these
arguments and the evidence presented, and concluded that petitioner did not prove his
renunciation by the requisite preponderance of the evidence. First, the Superior Court
judge noted that he found the police officer's testimony that petitioner was walking
toward the liquor store to be more credible than petitioner's testimony that he was
walking away from the liquor store. The judge also opined that there was not a
complete and voluntary renunciation as required by Delaware law because petitioner
did not attempt to prevent the commission of the crime. Moreover, "even if there was a
voluntary and complete renunciation," it was motivated by the probability of detection by
the police rather than by some "epiphany" on petitioner's part regarding the danger
involved in committing the crime. (D.I. 24, App. to Appellant's Br. in Harris v. State,
No.193,2004, at A-61)

On direct appeal, the Delaware Supreme Court affirmed the Superior Court's
judgment, specifically holding that,

> [u]nder the circumstances of this case, we find no error in the Superior Court's
> conclusion that [petitioner] had failed to establish the affirmative defense of
> renunciation by a preponderance of the evidence. It was entirely within the
> judge's discretion to credit the officer's testimony that [petitioner] was walking
> toward, not away from, the liquor store at the time of his [arrest]. Moreover,
> [petitioner] still had the stocking cap and shotgun in his possession. We find that
> the State's evidence was sufficient as a matter of law to prove all three criminal
> charges beyond a reasonable doubt.

Harris, 2005 WL 850421, at *2.

Based on this record, the court concludes that the Delaware Supreme Court's
determination that petitioner failed to establish renunciation by a preponderance of the
evidence was based on a reasonable determination of the facts. See 28 U.S.C. §

8

2254(d)(2). Significantly, petitioner admitted that he did not communicate his alleged renunciation to Nocho, and he failed to provide evidence to support his contention that he informed the other two co-defendants of his desire to abandon the robbery plan. Further, as noted by the Delaware Supreme Court, petitioner still possessed the shotgun and hat when the police stopped him, supporting the inference that petitioner did not take an affirmative step to prevent the commission of the crime. And finally, the court defers to the Superior Court's conclusion that the police officer's testimony regarding the direction in which petitioner was walking was more credible than the testimony offered by petitioner and Nocho. See Schlup v. Delo, 513 U.S. 298, 330 (1995)(holding that "the assessment of the credibility of witnesses is generally beyond the scope of review" for a habeas court considering the sufficiency of the evidence to support a conviction.).

In turn, viewing all of the evidence in a light most favorable to the State within the framework provided by Delaware's law for criminal attempts, the court concludes that there was sufficient evidence to support petitioner's conviction for attempted first degree robbery. Accordingly, the court will deny claim one because the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as set forth in Jackson.[6]

_____

[6]Although neither the Superior Court nor the Delaware Supreme Court cited or referred to Jackson in their respective decisions, the analyses contained in both decisions reveal that the state courts reviewed the evidence in a light most favorable to the State before holding that there was sufficient evidence to find petitioner guilty of attempted first degree robbery beyond a reasonable doubt. Additionally, the Delaware Supreme Court's decision is not contrary to clearly established Supreme Court precedent because neither the reasoning nor the result of the State Court's decision contradicts Jackson. See Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

9

2. De novo review: Petitioner's contention that there was insufficient evidence regarding the gun's functionality or petitioner's display of the gun to a victim

Petitioner argues that there was insufficient evidence to support his conviction for possession of a firearm during the commission of a felony or his conviction for attempted first degree robbery because the State did not prove the functionality of the shotgun or that petitioner displayed the gun to an actual victim. Petitioner presented these arguments to the Delaware Supreme Court on direct appeal, but the State Supreme Court did not address them. Therefore, the court will apply the pre-AEDPA standard and review the claim de novo.[7] See Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004).

First, petitioner's argument regarding the State's failure to prove the functionality of the shotgun lacks merit. Delaware law defines a firearm as "any weapon from which a shot, projectile, or other object may be discharged by force of combustion, explosive, gas and/or mechanical means, **whether operable or inoperable**, loaded or unloaded. It does not include a BB gun." 11 Del. C. Ann.§ 222(11)(emphasis added). In turn, a firearm constitutes a deadly weapon, even if the firearm is inoperable. 11 Del. C. Ann. § 222(5); Whitfield v. State, 524 A.2d 13, 15 (Del. 1987). During his trial, petitioner admitted that he had a shotgun on his person as he was walking toward the liquor store and at the time of his arrest. Additionally, one of the arresting police officers testified that petitioner was carrying a 12-gauge shotgun loaded with one round of Federal 7 ½

---

[7]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." Williams v. Taylor, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

shotgun shell at the time of his arrest. Accordingly, the court concludes that there was

sufficient evidence to support petitioner's convictions for possession of a firearm during

the commission of felony and attempted first degree robbery because petitioner's

shotgun constituted a firearm and deadly weapon, regardless of its operability. See,

e.g., Poon v. State, 880 A.2d 236, 239 (Del. 2005)(noting that, given the broad definition

of firearm, "recovery and testing of a weapon to determine if it is operable is not

required.").

The court similarly rejects petitioner's contention that there was insufficient

evidence to support his conviction for attempted first degree robbery because he never

actually displayed the shotgun to a liquor store employee. Count I of the indictment

charged that petitioner and his co-defendants as follows:

[O]n or about the 7th day of May, 2003 . . . when in the course of attempting to
commit theft, through the use of or through the threat of the immediate use of
force upon Sunilkumar Patel with intent to compel said person to deliver up
property consisting of money belonging to Pockets Liquor Store, [] traveled to the
liquor store or took other acts in furtherance of the planned robbery and when in
the course of the commission of the crime, they **intended to display what
appeared to be a deadly weapon, a shotgun,** or were armed with and
attempted to threaten the use of a dangerous instrument, a shotgun, which acts
under the circumstances as they believed them to be constituted a substantial
step or substantial steps in a course of conduct planned to culminate in Robbery
First Degree, in violation of Title 11, Section 832 of the Delaware Code of 1974,
as amended.

(D.I. 24, Grand Jury Indictment, App. to Appellant's Br. in Harris v. State, No.193,2004,

at A-5, A-6)(emphasis added) At his bench trial, petitioner admitted that he had a

shotgun on his person during the attempted robbery, and that he had "already decided

[before leaving the house] that [he was] going to use a weapon during [the] robbery." Id.

at A-44. He also testified that he "decided not to commit the robbery because we were

11

all endangering each other's lives and individuals that would also be in there." Id. at A-47. Viewing this evidence in a light most favorable to the State, the court finds there was sufficient evidence to establish that petitioner intended to display the shotgun during the robbery of the liquor store. Accordingly, the court concludes that the Delaware Supreme Court's decision to deny petitioner's insufficient evidence claim in its entirety was neither contrary to, nor an unreasonable application of, Jackson.

## B. Claim Two: Fourth Amendment Violation

In his second claim, petitioner contends that the police did not have a reasonable and articulable suspicion to stop him and conduct a search of his person. Therefore, he alleges that his Fourth Amendment rights were violated when the shotgun seized as a result of this search was admitted as evidence during his bench trial.

The State properly argues that this Fourth Amendment claim is not cognizable on federal habeas review under the doctrine established in Stone v. Powell, 428 U.S. 465, 494 (1976). In Stone, the Supreme Court held that federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. Id.; See Wright v. West, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under Mapp [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. See U.S. ex rel. Hickey v. Jeffes, 571 F.2d 762, 766

12

(3d Cir. 1978); Boyd v. Mintz, 631 F.2d 247, 250 (3d Cir. 1980); Petillo v. New Jersey, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim and, therefore, avoids the Stone bar if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002).

Here, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. Petitioner filed a pre-trial motion to suppress the shotgun and argued that the police officers did not have a reasonable suspicion for stopping him. The Superior Court denied the motion after conducting a hearing. See D.I. 24, Del. Super. Ct. Crim. Dkt. Entry Nos. 18, 20.) Then, on direct appeal, petitioner asserted that the Superior Court erred in denying his suppression motion, once again arguing that the investigatory stop conducted by police violated his Fourth Amendment rights. The Delaware Supreme Court denied the claim as meritless, explicitly holding that the police possessed a reasonable articulable suspicion necessary to stop petitioner at the scene due to the information provided by a concerned citizen. Accordingly, the court will deny claim two as barred by Stone.[8]

## C. Claim Three: Miranda violation

In claim three, petitioner contends that the police violated his rights under the

---

[8]Even if the Superior Court improperly denied petitioner's suppression motion, petitioner still had a "full and fair opportunity to litigate" his Fourth Amendment claim. See, e.g., Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002)(holding that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [Stone] bar.") ; Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir. 1986), cert. denied, 479 U.S. 1041 (1987).

13

Fifth Amendment by not administering a Miranda warning before asking him if he was carrying a weapon.[9] Petitioner raised this claim on direct appeal, and the Delaware Supreme Court denied the claim as meritless. Specifically, the Delaware Supreme Court held that the police had reasonable, articulable suspicion to conduct an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), and then explained that Miranda warnings are not required before a valid investigatory Terry stop. Harris, 2005 WL 850421, at **2-3. Therefore, the court must determine whether the Delaware Supreme Court's denial of petitioner's Miranda claim was contrary to, or an unreasonable application of, Supreme Court precedent.

Before proceeding, the court notes that the Delaware Supreme Court's rejection of petitioner's Miranda claim is inextricably intertwined with its determination that the police conducted a valid investigatory stop under Terry. Although Stone does not preclude habeas review of petitioner's claim asserting a Miranda violation,[10] Stone does bar the court from reviewing the Delaware Supreme Court's holding that the police conducted a valid Terry stop. See supra at pp. 12-13. As a result, the court will provide two different analyses of claim three: one presuming the validity of the Terry stop, and one disregarding the issue of the Terry stop's validity altogether.

_____

[9]It is well-settled that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Pursuant to Miranda, law enforcement officers must warn a person in custody prior to questioning that he has a right to remain silent, that anything he says may be used against him as evidence, and that he has a right to counsel. Id.

[10]See Withrow v. Williams, 507 U.S. 680 (1993).

14

### 1. Analysis based on presumption that the Terry stop was valid

According to Berkemer v. McCarty, 468 U.S. 420, 439 (1984), a police officer may ask the suspect a moderate number of questions during a valid investigatory Terry stop to determine the person's identity and to try to obtain information confirming or dispelling the officer's suspicions without first providing the Miranda warning. In petitioner's case, the police officer suspected petitioner might have a weapon because of the information provided by the concerned citizen who called the police. Upon stopping petitioner, the police officer asked whether petitioner had a weapon on his person. Therefore, presuming the validity of the Terry stop, the court concludes that the Delaware Supreme Court's decision rejecting petitioner's Miranda claim was neither contrary to, nor an unreasonable application of, Berkemer.

### 2. Analysis disregarding the validity of the Terry stop

Alternatively, even if the court cannot presume the constitutionality of the Terry stop in petitioner's case, the court still concludes that the claim does not warrant relief because the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, the narrow "public safety" exception to the timing of Miranda warnings established by the United States Supreme Court in New York v. Quarles, 467 U.S. 649, 654 (1984). In Quarles , the Supreme Court held that police officers can question suspects without first giving Miranda warnings when

> the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. We decline to place officers [] in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the Miranda warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the

15

admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

Quarles, 467 U.S. at 657. Here, the police officer knew that a concerned citizen in the vicinity of the liquor store observed several men exit a car and put on masks around 11:30 p.m. The police officer knew that the citizen also saw one of the men remove a "long pipe" from the car and place it in his overalls, and that all four men walked off in the direction of the liquor store. The police officer also knew that there had been several recent robberies in the vicinity of the citizen's sighting. Additionally, petitioner was wearing a knit cap and overalls fitting the general description provided by the concerned citizen when the police stopped him. Given these facts, the court concludes the police officer acted reasonably in asking petitioner if he had a weapon before providing a Miranda warning in order to insure the officer's personal safety. See United States v. Johnson, 2004 WL 882151 (3d Cir. 2004). Accordingly, the court will deny claim three for failing to satisfy § 2254(d)(1).

## D. Claim Four: Ineffective Assistance of Counsel

In his final claim, petitioner contends that defense counsel provided ineffective assistance of counsel by not filing a timely notice of appeal.[11] The Delaware Supreme

_____

[11]In his first traverse to the State's answer, petitioner argues that he did not have a full and fair opportunity to litigate his Fourth Amendment claim because counsel provided ineffective assistance. (D.I. 19) Given the context of petitioner's presentation, the court does not view petitioner's allegation as asserting an independent ineffective assistance of counsel claim and, therefore, does not review the allegation as such.

Further, the court will not review the additional ineffective assistance of counsel claims asserted in petitioner's first and second traverses which allege new instances of counsel's deficient performance that were not set forth in petitioner's original habeas petition. (D.I. 19; D.I. 20; D.I. 25; D.I. 26); Fed. R. Civ. P. 15(a),(c). Although petitioner timely filed his original § 2254 application, AEDPA's one-year limitations period expired

16

Court denied the claim as meritless. Harris, 2006 WL 2714447, at *1. Therefore, the

court must determine if the Delaware Supreme Court's decision was either contrary to,

or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established federal law governing ineffective assistance of counsel

claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S.

668 (1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510 (2003). Under the first

Strickland prong, the petitioner must demonstrate that "counsel's representation fell

below an objective standard of reasonableness," with reasonableness being judged

under professional norms prevailing at the time counsel rendered assistance.

Strickland, 466 U.S. at 688. The second Strickland prong requires the petitioner to

demonstrate "there is a reasonable probability that, but for counsel's error the result

would have been different." Id. at 687-96. A reasonable probability is a "probability

sufficient to undermine confidence in the outcome." Id. at 688. It is well-settled that a

petitioner has the burden of proving the facts in support of his ineffective assistance

claim. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996); Wells v. Petsock, 941 F.2d

---

prior to June 19, 2007 and August 24, 2007, the dates on which petitioner filed the first
and second traverses. Therefore, the court will not review the new ineffective
assistance of counsel claims because they do not relate back to the date of petitioner's
original habeas application. Fed. R. Civ. P. 15(a),(c); See Mayle v. Felix, 545 U.S. 644
(2005); United States v. Duffus, 174 F.3d 333, 336-37 (3d Cir. 1999) (finding that a
new ineffective assistance of counsel claim asserted in a motion to amend after
AEDPA's limitations period had already expired did not relate back to an ineffective
assistance of counsel claim asserted in the original timely habeas petition); U.S. v.
Thomas, 221 F.3d 430, (3d Cir. 2000)("Under Fed. R. Civ. P. 15(c), an amendment . . .
clarif[ying] or amplif[ying] a claim or theory in the petition may, in the District Court's
discretion, relate back to the date of the petition if and only if the petition was timely
filed and the proposed amendment does not seek to add a new claim or to insert a new
theory into the case").

253, 259-260 (3d Cir. 1991). The petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells, 941 F.2d at 259-260; Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

Here, the Delaware Supreme Court's denial of the claim was not contrary to clearly established Federal law because the Delaware Supreme Court analyzed the instant ineffective assistance of counsel claim within the Strickland framework. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). The court also concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of Strickland. The record reveals that petitioner filed a notice of appeal on his own behalf. The clerk of the Delaware Supreme Court then instructed defense counsel to file a formal notice of appeal by a certain date, and counsel complied. Harris, 2006 WL 2714447, at *1. After filing the notice of appeal, counsel filed a motion to withdraw from representing petitioner under Delaware Supreme Court Rule 26(c) along with an appellate brief containing the arguments raised by petitioner. Id. The Delaware Supreme Court granted counsel's motion to withdraw, and then reviewed the issues raised in petitioner's appellate brief. Thus, although counsel filed the notice of appeal after petitioner's pro se filing, petitioner has failed to demonstrate any prejudice arising from counsel's action. Accordingly, the court concludes that claim four does not warrant

18

habeas relief.[12]

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The court concludes that petitioner's habeas application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

_____

[12]To the extent petitioner's argument is that counsel provided ineffective assistance by filing a non-merit appellate brief along with a motion to withdraw, the court concludes that petitioner has failed to satisfy either prong of the Strickland test. See, e.g., DeJesus v. Carroll, 2007 WL 4365588, at *8-*9 (D. Del. Dec. 12, 2007).

19